PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, and Lemons, JJ., and Carrico[1] and Stephenson, S.JJ.

NORTHERN VIRGINIA ELECTRIC COOPERATIVE

v.  Record No. 021998

VIRGINIA ELECTRIC & POWER COMPANY,
D/B/A DOMINION VIRGINIA POWER, ET AL.

                                    OPINION BY
                        SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                             February 28, 2003

OLD DOMINION ELECTRIC COOPERATIVE, ET AL.

v.  Record No. 022023

VIRGINIA ELECTRIC & POWER COMPANY,
D/B/A DOMINION VIRGINIA POWER, ET AL.

                FROM THE STATE CORPORATION COMMISSION

    In these consolidated appeals of right, we decide whether

the State Corporation Commission (the Commission) erred in

determining which of two utilities is the proper provider of

electric power service to a customer whose property lies partly

within the certificated service territory of each utility.

                                I

                                A

    Appellant, Northern Virginia Electric Cooperative (NOVEC),

is an electric power distribution cooperative organized and

existing under the Utility Consumer Services Cooperatives Act,

_____

    [1] Chief Justice Carrico presided and participated in the
hearing and decision of this case prior to the effective date of
his retirement on January 31, 2003.

Code § 56-231.15 et seq., and is a Virginia public service corporation. Appellant, Old Dominion Electric Cooperative (Old Dominion), is a utility aggregation cooperative organized and existing under the Utility Aggregation Cooperatives Act, Code § 56-231.38 et seq., and is the exclusive wholesale electric power supplier for NOVEC. Appellant, Virginia, Maryland and Delaware Association of Electric Cooperatives (the Association), is comprised of all the electric power distribution cooperatives operating in Virginia, Maryland, and Delaware.

Appellee, Virginia Electric & Power Company (VEPCO), doing business as Dominion Virginia Power (Dominion Power), is a Virginia public service corporation authorized to transact business as an electric utility in the Commonwealth. Additional appellees are the Smithsonian Institution (Smithsonian), United States General Services Administration (GSA), and the Commission.

B

A brief summary of the relevant facts will suffice. Smithsonian is developing a National Air and Space Museum Annex (the Annex) adjacent to Dulles International Airport. Smithsonian proposes to open the Annex to the public in December 2003, a date that will coincide with the centennial celebration of the Wright brothers' first powered flight.

2

The Annex is composed of a main building and a separate parking lot and is located on land owned by GSA. Approximately two-thirds of the entire site on which the Annex is located lies within Dominion Power's certificated service territory. However, approximately 95% of the main building is in NOVEC's certificated service territory. Additionally, it is projected that over 95% of the Annex's electric service load will be located in NOVEC's certificated service territory.

In order to obtain electric power from Dominion Power, Smithsonian installed its own service line. The line extends for one-quarter of a mile from a location at the main building and within NOVEC's certificated service territory to a point just across the territory border and within Dominion Power's certificated service territory. Smithsonian's project manager testified that the service line was designed to enable Smithsonian to receive electric power from Dominion Power.

Dominion Power, with NOVEC's consent, has been providing temporary electric power service to the Annex during construction. The record shows that both Dominion Power and NOVEC are capable of providing reliable electric power service to the Annex. Smithsonian, however, has requested that Dominion Power be its service provider. The parties concede that it would be contrary to the public interest for both utilities to serve Smithsonian, and the Commission agrees.

On September 17, 2001, NOVEC filed a petition for declaratory judgment with the Commission, seeking a declaration that the Annex is within its certificated service territory and that, therefore, it possesses the exclusive right under the Utility Facilities Act, Code § 56-265.1 et seq., to provide electric power service to the Annex. NOVEC also sought an injunction prohibiting Dominion Power from providing such service.[2] On October 12, 2001, Dominion Power filed an answer and counter-petition, seeking a declaration that it has the statutory and legal obligation to provide electric power service to the Annex.[3]

Thereafter, a Commission examiner conducted a public hearing. Upon the evidence and argument heard ore tenus and the parties' post-hearing briefs, the hearing examiner issued her report on March 20, 2002. The hearing examiner found that a combination of the "point-of-use" and the "geographic-load-center" tests should be utilized to resolve this territorial dispute. The hearing examiner further found that:

---

[2] Subsequently, Old Dominion and the Association were granted leave to participate in the proceeding in support of NOVEC.

[3] The United States Department of Justice accepted the Commission's invitation to respond to NOVEC's petition and filed a response on behalf of Smithsonian and GSA in support of Dominion Power.

1. NOVEC has the right and the obligation to provide electric service to the new Smithsonian museum facility[,] including the hangar, the main central utility plant, four air handling unit areas, and the IMAX theatre; and

2. [Dominion Power] has the right and obligation to provide service to the parking lot unless it transfers that territory to NOVEC.

The hearing examiner recommended that the Commission enter an order that: (1) adopts the findings of the report; (2) grants NOVEC's petition for declaratory judgment; (3) denies Dominion Power's counter-petition; (4) directs Dominion Power, Old Dominion, and NOVEC, in consultation with Smithsonian, to submit a plan, within 30 days of the date of the final order, detailing how and when NOVEC would begin providing electric power service to the Annex; (5) enjoins NOVEC, Old Dominion, and Dominion Power to work cooperatively to accommodate a timely and efficient transfer of service; (6) directs NOVEC, Old Dominion, and Dominion Power to file a joint progress report bimonthly until completion of the transfer; and (7) dismisses the matter from the Commission's docket after completion of the transfer.[4]

On May 1, 2002, the Commission issued its final order, rejecting the hearing examiner's recommendations. The Commission denied NOVEC's request for relief and, instead,

---

[4] NOVEC, Old Dominion, and the Association filed comments in support of the hearing examiner's report and urged the Commission to adopt it. Dominion Power and Smithsonian filed objections to the report.

5

granted Dominion Power's counter-petition, allowing Dominion

Power to provide electric power service to the Annex.  Northern

Virginia Electric Cooperative, Etc., Case No. PUE-2001-00512.

These appeals ensued.

III

A

It is firmly established that a decision by the Commission

> comes to this court with a presumption of correctness.
> The Constitution of Virginia and statutes enacted by
> the General Assembly thereunder give the Commission
> broad, general and extensive powers in the control and
> regulation of a public service corporation.  The
> Commission is charged with the responsibility of
> finding the facts and making a judgment.  This court
> is neither at liberty to substitute its judgment in
> matters within the province of the Commission nor to
> overrule the Commission's finding of fact unless we
> can say its determination is contrary to the evidence
> or without evidence to support it.

Campbell County v. Appalachian Pow. Co., 216 Va. 93, 105, 215

S.E.2d 918, 927 (1975).  Additionally, the Commission's decision

"is entitled to the respect due judgments of a tribunal informed

by experience," and we will not disturb the Commission's

analysis when it is " 'based upon the application of correct

principles of law.' "  Lawyers Title Insurance Corp. v. Norwest

Corp., 254 Va. 388, 390-91, 493 S.E.2d 114, 115 (1997) (quoting

Swiss Re Life Co. Am. v. Gross, 253 Va. 139, 144, 479 S.E.2d

857, 860 (1997)).  However, the Commission's decision, if based

6

upon a mistake of law, will be reversed.  First Virginia Bank v. Commonwealth, 213 Va. 349, 351, 193 S.E.2d 4, 5 (1972).

B

The Utility Facilities Act establishes the framework for the granting of certificates of public convenience and necessity authorizing utilities to provide exclusive service in designated territories.  Code § 56-265.3 thereof prohibits a utility from providing service unless it first obtains from the Commission such a certificate.  Code § 56-265.4 prohibits a utility from providing service in another utility's certificated service territory unless the utility proves to the Commission's satisfaction that the other utility is incapable of providing adequate service, but only after the other utility is given a reasonable time and opportunity to remedy its inadequacy.

The Commission possesses broad discretion in determining whether to grant a certificate of convenience and necessity, and we must accept the Commission's findings unless they are contrary to or unsupported by the evidence.  Stafford Corps. v. Corp. Comm., 220 Va. 559, 562, 260 S.E.2d 226, 228 (1979).  A certificate of public convenience and necessity, we have held, is a valuable property right entitled to protection by the courts.  Culpeper v. VEPCO, 215 Va. 189, 193-94, 207 S.E.2d 864, 867-68 (1974).

IV

7

NOVEC contends that "[t]he Commission's decision is erroneous as a matter of law" because it "contradicts the Utility Facilities Act's plain mandate that utilities shall not serve customers' facilities that are located in other utilities' service territories." Relying upon Code §§ 56-265.3 and -265.4, NOVEC asserts that "no utility is allowed to invade the service territory of another utility unless the certificated utility cannot provide adequate service, after being given notice and an opportunity to cure the deficiency." Thus, NOVEC asserts, the Commission's decision destroyed its valuable property right.

NOVEC further contends that, based upon Commission precedent, the "point-of-use" test should be applied to decide this territorial dispute. Application of this test, NOVEC asserts, would give it the right to provide electric power service to the Annex because 95% of the facility lies within its certificated service territory. NOVEC also asserts that Dominion Power and Smithsonian manipulated the delivery point so Smithsonian could receive its electric power service from Virginia Power.

NOVEC relies upon two Commission cases: Prince George Electric Cooperative, Etc., Case No. PUE-1996-00295, 1998 S.C.C. Ann. Rep. 344 (the Prince George Case), and Petition of Kentucky Utilities Company, Etc., Case No. PUE-1996-00303, 1999 S.C.C.

Ann. Rep. 368 (the Kentucky Utilities Case). In the Prince George Case, a new customer began construction of a mineral processing plant on a tract of land located wholly within the certificated service territory of Prince George Electric Cooperative (Prince George). The customer, however, desired electric power service from VEPCO, and it purchased a narrow strip of land, 4,380 feet long and 30 feet wide, that just extended into VEPCO's service territory. VEPCO delivered electric power service to the customer through the narrow corridor to a point of use located in Prince George's service territory. Prince George Case, 1998 S.C.C. Ann. Rep. at 344.

The Commission, after comparing the "point-of-use" and the "point-of-delivery" tests, concluded that the point-of-use test would best ensure the integrity of the certificated service territories. The Commission reasoned that the point-of-delivery test would destroy the essence of exclusive service territories by permitting customers, through manipulation of delivery points, to avoid receiving service from a utility that was allotted the territory in which the customer was located. In adopting the point-of-use test, however, the Commission made plain that the test is not absolute and stated the following:

> While we do not here adopt any absolute test and will always consider the practical realities of each situation, we intend to ensure that our decisions enforce the Code's requirement of strong protection

9

for the exclusive service territories of utilities in Virginia.

Id. at 349.

In the Kentucky Utilities Case, Kentucky Utilities Company (Kentucky Utilities) served Sigmon Coal Company (Sigmon Coal) in Kentucky Utilities' exclusive service territory. Sigmon Coal installed facilities that allowed it to connect with Powell Valley Electric Cooperative (Powell Valley) at a single consolidated delivery point located in the adjacent service territory allotted to Powell Valley. Powell Valley and Sigmon Coal subsequently constructed additional facilities that enabled Sigmon Coal to discontinue all service from Kentucky Utilities. Kentucky Utilities Case, 1999 S.C.C. Ann. Rep. at 369.

The Commission ruled that Kentucky Utilities should serve all of Sigmon Coal's facilities. The Commission concluded that, if Sigmon Coal had been "allowed to avoid its electric provider based on manipulation of its delivery point, the protection and certainty that the Utility Facilities Act was designed to provide to territorial grants would be diminished, if not significantly eroded." Id. at 376.

B

Dominion Power contends that, when the facts of this case are viewed in the light of the deferential standard we apply to the Commission's decisions, NOVEC and Old Dominion cannot

10

prevail. Dominion Power further contends that the Commission's decision does not violate the Utility Facilities Act or destroy NOVEC's property right because NOVEC "never possessed an exclusive right to serve the new museum." Dominion Power also disputes NOVEC's contention that the Commission simply adopted a "customer choice" test in deciding this case. According to Dominion Power, the Commission based its decision on the "practical realities" of the situation, as well as the customer's stated preference.

V

A

In support of her recommendations to the Commission, the hearing examiner concluded that "the combination of a point of use and geographic load center analysis should be considered to resolve the territorial dispute under the facts presented in this case." The "geographic-load-center" test was discussed in a Colorado case addressing issues similar to those in the present case. See Public Service Co. v. Public Util. Com'n, 765 P.2d 1015, 1019 (Colo. 1988). Under the geographic-load-center test, the utility that serves the majority of a customer's load is permitted to serve the entire load, regardless of territorial boundaries. Id.

B

11

The Commission did not adopt the hearing examiner's report. Instead, it determined that Dominion Power is entitled to provide electric power service to the Annex. After discussing the relevant statutes and other authorities previously set forth herein, the Commission stated that, "where two public utilities hold certificates of public convenience and necessity to serve real property that lies in both utilities' allotted service territories[,] . . . we must consider the practical realities of [the] situation." This conclusion, the Commission noted, is consistent with the Prince George Case.

The Commission observed, however, that, "[u]nlike the customer in Prince George, the Smithsonian did not manipulate its land purchase to reach into [Dominion Power's] service territory to place a meter." The Commission concluded, therefore, that, "[u]nder these circumstances, both NOVEC and [Dominion Power] have the right and duty to provide electric service to this new customer if requested to do so." The Commission added, however, that the utilities "were also both at risk that the customer would request service from one rather than the other," but that "no other factors or practical realities necessitat[ed] a conclusion that the customer must take service from NOVEC." The Commission agreed with the hearing examiner and the parties that "it is impractical to

12

require that electric service be extended by both NOVEC and

[Dominion Power] to the Smithsonian museum."

The Commission, therefore, held the following:

> [G]iven no extenuating circumstances or other
> practical considerations, where the facilities of a
> new customer straddle the contiguous service territory
> boundaries of two utilities, and with the absence of
> manipulation, that customer may request service from
> the utility of its choice.  Section 56-234 of the Code
> of Virginia directs every utility to "provide adequate
> service and facilities at reasonable and just rates to
> any person, firm, or corporation along its lines
> desiring same."[5]

## VI

We do not think that the General Assembly, in enacting the

Utility Facilities Act, could have envisioned the peculiar facts

and circumstances of the present case.  Consequently, the

Commission, as the tribunal informed by experience, was required

to exercise its broad discretion in order to fashion a fair,

reasonable, and practical resolution of the issue at hand.  When

we accord to the Commission's decision the presumption of

correctness to which it is entitled, it is clear that the

Commission's decision must be affirmed.  Finding that the

---

[5] NOVEC and Old Dominion assert that Code § 56-234 is limited in scope to issues involving rates and that the Commission erroneously used this statute to "supersede" the operation of the Utility Facilities Act.  We reject this assertion and, in doing so, rely upon two non-rate cases in which we noted that Code § 56-234 required a public utility to furnish adequate service to its customers.  Henderson v. Central Telephone Co., 233 Va. 377, 379, 355 S.E.2d 596, 597 (1987);

decision is supported by the law and the evidence, we will

affirm the Commission's order.

Affirmed.

---

Tidewater Utilities  v. Norfolk, 208 Va. 705, 711, 160 S.E.2d
799, 803 (1968).