Present:  Kinser, C.J., Lemons, Millette, McClanahan, and
Powell, JJ., and Lacy and Koontz, S.JJ.

VIRGINIA ELECTRIC AND POWER COMPANY

                                        OPINION BY
v.  Record Nos. 120519   SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
          & 120520              November 1, 2012

STATE CORPORATION COMMISSION, ET AL.

              FROM THE STATE CORPORATION COMMISSION


     These consolidated appeals arise from a final

determination of the State Corporation Commission

("Commission") in a mandated biennial review of "the rates,

terms and conditions for the provision of generation,

distribution and transmission services [of an] investor-owned

incumbent electric utility" pursuant to the provisions of the

Virginia Electric Utility Regulation Act.  Code §§ 56-576 et

seq.  As amended by the General Assembly in 2007, the Act

significantly altered the procedures and authority of the

Commission with respect to electric utility ratemaking.[1]

     As pertinent here, commencing in 2011, the Act requires

the Commission to conduct biennial reviews of an electric

utility's performance during the two successive 12-month

periods immediately prior to such reviews.  Code § 56-

---

     [1] For a more detailed discussion of the legislative
history of the regulatory scheme now incorporated in the Act
and the intended goals of the Act see Appalachian Power Co. v.
State Corporation Commission, 284 Va. ___, ___, ___ S.E.2d
___, ___ (2012) (this day decided).

585.1(A).  In doing so, the Commission is required to determine, among other things, "fair rates of return on common equity" ("ROE") and "the rates that the utility may charge until such rates are adjusted."  Id.

These appeals present the first opportunity for this Court to consider the Commission's application of Code § 56-585.1 in a biennial review.  The principal focus of these appeals is whether in the 2011 biennial review of the performance of Virginia Electric and Power Company ("VEPCO") in the 2009-2010 test period, the Commission erred in determining that the utility's authorized ROE of 10.9% would apply to the entire 2011-2012 test period in the next biennial review in 2013.

BACKGROUND

VEPCO is an investor-owned electric utility providing generation, distribution, and transmission services within Virginia.  As such, the rates it charges for these services are subject to regulation under the Act.

In accord with the requirements of Code § 56-585.1(A), on March 31, 2009 VEPCO filed an application for the Commission to review VEPCO's prevailing rates, terms and conditions for generation, distribution, and transmission services and to determine VEPCO's authorized base rate.  This rate case, frequently referred to as a "going-in" review, served as a

transition to the new biennial review process commencing in 2011. After completing its initial case, in an order entered March 11, 2010, the Commission adopted an agreed stipulation, made among VEPCO, the Office of the Attorney General Division of Consumer Counsel, and various other interested parties, that VEPCO's rates in the 2009-2010 biennial period would reflect an ROE of 11.9% "unless and until reset in the biennial review process" in 2011. Application of Virginia Electric and Power Co., Case No. PUE-2009-00081 (March 11, 2010). In an addendum to the agreed stipulation, the parties clarified that VEPCO's ROE "shall be utilized for purposes of the Earnings Test prescribed for the Company's first biennial review." Id. Accordingly, although the order was entered in 2010, under the agreed stipulation and addendum the 11.9% ROE would serve as the fair rate of return for the entire 2009-2010 period to be reviewed in 2011.

Thereafter, on March 31, 2011, VEPCO filed an application with the Commission for the first biennial review as required by Code § 56-585.1(A)(3). In its application, VEPCO requested that the Commission approve a new ROE of 12.5% "to be applied . . . prospectively upon the effective date of the final order in this proceeding." Application of Virginia Electric and Power Co., Case No. PUE-2011-00027 (March 31, 2011).

3

The biennial review process prescribed by Code § 56-585.1 includes many different elements, including a determination of whether the ROE from the prior biennial period permitted the utility to fully recover the costs of providing the utility's services and to earn a fair rate of return and, if not, to determine what recoupment or rebate would be applied to rates going forward. The Commission also must set the ROE for the current biennial period, as well as determine whether the individual rates allowed for the utility's generation, distribution, and transmission of electric power should be altered. Accordingly, the ratemaking process is necessarily fact driven, lengthy, and complex, generating a voluminous record.

In these appeals, VEPCO has not challenged any of the factual determinations of the Commission with regard to the rates applied in the 2009-2010 biennium and which continued to be charged while the review process was ongoing, or with regard to the rates to be charged going forward in the 2011-2012 biennium and the ROE which will be used to evaluate VEPCO's performance for the 2011-2012 biennium in the 2013 biennial review. Rather, VEPCO has challenged only the Commission's determination, as detailed below, that the ROE set for the 2011-2012 biennial review would serve as the fair rate of return for the entire 2011-2012 biennium rather than

4

for only the period following the date of the final order in the 2011 review.  Accordingly, we need only briefly summarize the relevant rulings made by the Commission that relate to this issue.

On November 30, 2011, the Commission entered a final order on VEPCO's application, noting that it was "a first-of-its-kind" proceeding.  Application of Virginia Electric and Power Co., Case No. PUE-2011-00027 (Nov. 30, 2007).  After reviewing the evidence and assertions of VEPCO, the Office of the Attorney General Division of Consumer Affairs, other interested parties, and the report and recommendations of its staff, the Commission set a 10.9% ROE for the biennial period. The order further stated that "[t]he 10.9% ROE determined in this proceeding . . . will serve as the fair combined rate of return against which [VEPCO]'s earned return will be compared in its next biennial review proceeding" in 2013.

VEPCO filed a timely petition for reconsideration of the November 30, 2011 final order.  5 VAC § 5-20-220.  VEPCO maintained in the petition that the Commission had "adopted" the view expressed by VEPCO in the proceeding that the ROE determined in the proceeding would apply prospectively only, but wanted "confirmation" of this point.  The Commission granted VEPCO's petition in an order dated December 16, 2011,

5

stating that "[r]econsideration is granted for the purpose of continuing the Commission's jurisdiction over these matters."

After setting a briefing schedule, the Commission received briefs from its staff counsel, the Office of the Attorney General Division of Consumer Counsel, and other interested parties. VEPCO filed a response that, for all intents and purposes, mirrors the positions it has taken in these appeals. These arguments will be detailed in the discussion below.

The Commission entered an order and opinion addressing VEPCO's petition for reconsideration on March 29, 2012. The Commission first opined that Code § 56-585.1(A) "is not prescriptive but, rather, is discretionary as to when the ROE - as determined by the Commission - becomes applicable for any particular two-year biennial review period." The Commission noted that the General Assembly had made express provision for many aspects of determining ROE which limited the Commission's discretion, but had not made any express provision for melding two different ROEs in the same biennial period, as VEPCO had requested the Commission to do. The Commission further noted that the stipulation from 2010, which set the ROE to be used for review of VEPCO's 2009-2010 earnings, had been advocated by VEPCO as an appropriate exercise of the Commission's authority.

6

The Commission rejected the position maintained by VEPCO that "unless and until reset in the biennial review process" language of the stipulation was intended to carry the 2009-2010 ROE forward into 2011. To the contrary, the Commission was of opinion that the language did no more than recognize that the Commission would reset the ROE for the new biennial period.

Finally, the Commission noted that the ROE for a given biennial period does not "result in a rate change and is not the same as setting rates." This is so, because the ROE for a biennial period does not alter the rates to be charged during that period but, rather, is only used to adjust the rates, if necessary, in the next biennial review to allow the utility to recoup a shortfall in revenue or rebate any excess revenue to customers as determined by applying the ROE for that biennium. Thus, the Commission concluded that utilizing the ROE set in 2011 for the entire 2011-2012 biennium was consistent with its function within the ratemaking process because "[f]or purposes of the biennial review, the relevant ROE interrogative is not 'when,' but 'what.' The proper question is not 'when' did the Commission make such finding but, rather, 'what' is the ROE" for the new biennial period.

The Commission concluded that Code § 56-585.1 "does not mandate the specific time period of any ROE application in any

7

biennial review," and thus, the General Assembly intended for this determination to be committed to the Commission's sound discretion. Accordingly, the Commission ruled that in the 2013 biennial review the 10.9% ROE would serve as the fair rate of return for the entire 2011-2012 biennium. These appeals followed.

DISCUSSION

VEPCO noted appeals from both the Commission's November 30, 2011 order and its March 29, 2012 order, but assigned identical errors in each appeal:

1. The State Corporation Commission ("Commission") erred in its November 30, 2011 Final Order in Case No. PUE-2011-00027 ("Final Order"), as clarified in its March 29, 2012 Order on Reconsideration and Opinion ("Order on Reconsideration"), when, in determining the Company's authorized fair rate of return on common equity ("ROE") pursuant to the biennial review process mandated by Va. Code § 56-585.1, it held that it will apply the 10.9% ROE authorized in the Final Order retroactively to January 1, 2011, rather than prospectively from the date of the Final Order, contrary to Va. Code § 56-585.1.

2. The Commission erred in its Final Order, as clarified in its Order on Reconsideration, when it held that the determination of the effective date of the Company's authorized ROE pursuant to Va. Code § 56-585.1 falls within the discretion of the Commission, and thus erroneously held that it may apply the 10.9% ROE authorized in the Final Order retroactively to January 1, 2011, rather than prospectively from the date of the Final Order.

3. The Commission erred in its Final Order, as clarified in its Order on Reconsideration, when, in determining the Company's authorized ROE pursuant to

8

the biennial review process mandated by Va. Code § 56-585.1, it held that it will apply the 10.9% ROE authorized in the Final Order retroactively to January 1, 2011, rather than prospectively from the date of the Final Order, implicating an unlawful retroactive change in rates of service authorized by the Commission to be charged by the Company in contravention of Virginia common law and the Constitutions of the Commonwealth of Virginia and the United States.

4. The Commission erred in its Final Order, as clarified in its Order on Reconsideration, when, in determining the Company's authorized ROE pursuant to the biennial review process mandated by Va. Code § 56-585.1, it held that its retroactive application of the 10.9% ROE authorized in the Final Order is consistent with its March 11, 2010 Order Approving Stipulation and Addendum in Case No. PUE-2009-00019, and that the parties to the Stipulation and Addendum, including the Company, agreed that the Company's 11.9% ROE authorized thereunder would not apply to earnings for the period January 1, 2011 through the effective date of the Commission's Final Order in the 2011 biennial review.

VEPCO and the appellees[2] agree as to the standard of review we are to apply, each having cited Appalachian Voices v. State Corporation Commission, 277 Va. 509, 515-16, 675 S.E.2d 458, 460-61 (2009), in which we quoted the following passage from Northern Virginia Electric Cooperative v.

---

[2] In addition to the Commission, represented by its staff counsel, the Office of the Attorney General Division of Consumer Counsel, the Virginia Committee for Fair Utility Rates, and the Fairfax County Board of Supervisors have appeared in these appeals as appellees in support of the Commission's ruling. With respect to the dispositive issues of these appeals, the appellees are mostly in accord in their positions supporting the Commission's decision. Accordingly, we will summarize their arguments jointly.

Virginia Electric & Power Co., 265 Va. 363, 368, 576 S.E.2d

741, 743-44 (2003):

> It is firmly established that a decision by the
> Commission
>
> comes to this court with a presumption of
> correctness. The Constitution of Virginia and
> statutes enacted by the General Assembly
> thereunder give the Commission broad, general
> and extensive powers in the control and
> regulation of a public service corporation.
> The Commission is charged with the
> responsibility of finding the facts and making
> a judgment. This court is neither at liberty
> to substitute its judgment in matters within
> the province of the Commission nor to overrule
> the Commission's finding of fact unless we can
> say its determination is contrary to the
> evidence or without evidence to support it.
>
> Campbell County v. Appalachian Pow. Co., 216 Va. 93,
> 105, 215 S.E.2d 918, 927 (1975). Additionally, the
> Commission's decision "is entitled to the respect
> due judgments of a tribunal informed by experience,"
> and we will not disturb the Commission's analysis
> when it is " 'based upon the application of correct
> principles of law.' " Lawyers Title Insurance Corp.
> v. Norwest Corp., 254 Va. 388, 390-91, 493 S.E.2d
> 114, 115 (1997) (quoting Swiss Re Life Co. Am. v.
> Gross, 253 Va. 139, 144, 479 S.E.2d 857, 860
> (1997)). However, the Commission's decision, if
> based upon a mistake of law, will be reversed.
> First Virginia Bank v. Commonwealth, 213 Va. 349,
> 351, 193 S.E.2d 4, 5 (1972).

At the outset of our discussion, it is important to make

clear, as did the Commission, the distinction between the

"rates" which are allowed to be charged by an electric utility

as determined by the Commission for a biennial period, and the

"ROE" set in the same biennial review process. As the

10

Commission explained in its March 29, 2012 order, the setting of the ROE does not "result in a rate change and is not the same as setting rates" for the biennial period in which the review is conducted. Rather, the ROE is used as a benchmark in the next biennial review for determining whether the utility has received a fair rate of return during the preceding biennium, neither reaping a windfall if market conditions, such as cost of fuel, consumer demand, and other variables, are more favorable than anticipated, nor suffering an undue loss if these variables are less favorable than the projections used to set the rates in the preceding biennial review.[3]

During VEPCO's 2011 biennial review the determination whether VEPCO's revenues from 2009 through 2010 had allowed it an appropriate rate of return was controlled by the 11.9% ROE established in the Commission's March 11, 2010 order. The 10.9% ROE established in the 2011 review process will be used in the 2013 biennial review to determine what adjustment may be necessary for VEPCO's revenue from 2011 through 2012. In this sense, an ROE is "prospective" at the time it is established in one biennial review, and it is not utilized by

---

[3] The ROE is used by the Commission in setting rates when circumstances require rate adjustments under Code § 56-585.1(A)(8). This aspect of that statutory provision is not at issue in these appeals.

the Commission until the Commission conducts its retrospective review of prior earnings in the next biennial review. VEPCO does not challenge the Commission's 10.9% ROE determination. Where the parties differ is whether the Commission has the discretion to apply that ROE to revenue that was earned before that ROE was established by the Commission's order of November 30, 2011. Thus, the crux of these appeals is whether during the 2013 biennial review VEPCO's revenues will be subject to an 11.9% ROE for the first 11 months of 2011, and a 10.9% ROE thereafter, as it maintains, or whether the Commission correctly determined that it has the discretion to apply the 10.9% ROE to the entire 2011-2012 biennium.

VEPCO first contends that the Commission erred in holding that it would apply the 10.9% ROE "retroactively" to January 1, 2011 in the 2013 biennial review because, in VEPCO's view, the plain language of Code § 56-585.1 mandates prospective application of a newly determined ROE. To support this assertion, VEPCO relies on four selected statements gleaned from the statute.

First, VEPCO notes that with regard to the initial "going-in" review, Code § 56-585.1(A) provides that "the Commission shall determine the rates that the utility may charge until such rates are adjusted." (Emphasis added.) VEPCO contends that this language shows that the legislature

12

intended for the rates set initially to continue, and be subject to the ROE set for that period, until the rates were adjusted in the first biennial review. In this regard, VEPCO maintains that because it was required to charge the base rates set by the "going-in" review and authorized to collect the revenues generated thereby into the next biennium while the 2011 review was taking place, it should be allowed "to retain those revenues based on the 11.9% rate of return," subject to any adjustment in the next, that is the 2013, biennial review.

VEPCO further notes that a similar provision is found in Code § 56-585.1(A)(8), which provides that in subsequent biennial reviews after the "going-in" review, "any revisions in rates or credits . . . shall take effect not more than 60 days after the date of the order." (Emphasis added.) VEPCO contends that this language shows that the legislature intended for the effect of all actions taken by the Commission in a biennial review to be prospective only, limiting its discretion to when during the 60 day period the Commission's order will take effect.

The appellees respond that when Code § 56-585.1 is read as a whole, it is clear that the General Assembly understood the distinction between "rates," any change in which must be approved by the Commission, and the ROE, which is a benchmark

13

used to determine at a future date whether the approved rates have provided the utility with a fair rate of return on equity. Thus, they contend that VEPCO's reliance on these two provisions within the statute is misplaced, as they clearly speak to when a change may be affected in "rates," and have no application to the ROE that is to be applied to revenue derived from those rates at a future date. We agree.

When construing a statute, our " 'primary objective . . . is to ascertain and give effect to legislative intent.' " Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010) (quoting Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). And if the language of the statute "is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." Id. Moreover, in evaluating a statute in this way, we have said that "consideration of the entire statute . . . to place its terms in context to ascertain their plain meaning does not offend the rule because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" Eberhardt

14

v. Fairfax Cnty. Emps. Ret. Sys. Bd. of Trs., 283 Va. 190, 194-95, 721 S.E.2d 524, 526 (2012) (quoting VEPCO v. Board of Cnty. Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)). Thus, "[a] statute is not to be construed by singling out a particular phrase." VEPCO, 226 Va. at 388, 309 S.E.2d at 311.

Code § 56-585.1 is a comprehensive statute detailing a complex and cohesive regulatory scheme. The two phrases that VEPCO has singled out plainly do not support the proposition being advanced because, as the appellees observe, these provisions apply to rates not rate of return, which under the statute are distinct, separate concepts.

VEPCO, however, points to two additional provisions in Code § 56-585.1 to support its contention that all decisions made by the Commission in a biennial review are to be prospectively applied. First, VEPCO notes that in subsection (A)(2), the statute provides that an ROE "shall be determined by the Commission during each such biennial review." VEPCO reasons that it would be harmonious to interpret this provision as meaning that an ROE should be applied prospectively in the same way as the rates, as both are determined in the biennial review.

VEPCO asserts that there is further support for this view in subsection (A)(2)(c), which provides that if the Commission

15

adopts a "Performance Incentive" increasing a utility's base ROE, the incentive "shall remain in effect without change until the next biennial review for such utility is concluded." VEPCO contends that this language plainly evinces a legislative intent that both the incentive and the ROE to which it is added can only be changed prospectively.[4]

According to VEPCO, these provisions demonstrate that "[i]f the General Assembly had intended the [ROE] to apply retroactively . . . then the 2007 Act would have said so. In fact, it explicitly provides to the contrary."

The appellees respond that VEPCO's assertion in this regard is contrary to the overall scheme of the statute. They contend, as did the Commission in its March 29, 2012 opinion, that when read as a whole it is clear that where the General Assembly wished to limit the discretion of the Commission, it did so expressly. See, e.g., Code §§ 56-585.1(A)(2)(a) (requiring a set floor and ceiling for the ROE); -585.1(A)(10) (prescribing what capital structure and cost to use in measuring return on equity); -585.1(A)(6) (prescribing additional ROE for different generation technology). By contrast, the legislature did not dictate that a new ROE would

_____

[4] Whether a performance incentive can only be changed prospectively is not before us in these appeals. Accordingly, we express no opinion on that issue.

16

serve as the fair rate of return for the entire biennium because the ROE would not be utilized until the next biennial review in any case. Thus, the absence of such language, far from indicating an intent that the ROE not be applicable to the entire biennium, must be interpreted as a recognition that the General Assembly did not wish to alter the manner in which an ROE would be utilized, leaving it to the Commission to make such adjustments in its discretion if it deemed proper and necessary.

We agree with the Commission's observation in its March 29, 2012 opinion that the directive that the ROE for a biennium "shall be determined by the Commission during each such biennial review" means exactly what it says and nothing more. That is, this language directs that a new ROE is to be determined by the Commission during the biennial review based on the most recently available criteria, but it says nothing about limiting the application of an ROE to less than the full biennium in the subsequent review. It plainly does not mandate that an ROE must be applied to less than the full biennium.

In short, the better reading of VEPCO's four selections from Code § 56-585.1 is to place them in context within the entire statute. In doing so, it is entirely consistent with the overall legislative intent expressed therein that the

17

General Assembly would expressly dictate that the "rates" which already have been assessed while a biennial review was pending could only be modified prospectively, but would make no such provision for an ROE, which is used as a benchmark to evaluate performance after the biennium which is under review has ended. Accordingly, we hold that the Commission did not err in concluding that Code § 56-585.1 does not mandate prospective application of an ROE from the date it is set by the Commission's final order at the conclusion of a biennial review.

VEPCO next contends that even if Code § 56-585.1 does not expressly mandate that the Commission must apply the ROE determined in a biennial review prospectively from the date of its final order, the Commission nonetheless erred in concluding that it had the discretion to utilize the ROE for the entire 2011-2012 biennium because of statutory, procedural, and due process constraints as well as policy considerations.[5] We will address each aspect of VEPCO's contentions in turn.

Initially, VEPCO maintains that the same statutory provisions that it relied upon in asserting that prospective application of an ROE is mandatory also in this case limit the

_____

[5] On brief, VEPCO combined the issues of its second and third assignments of error in this argument.

18

Commission's discretion to apply the 10.9% ROE to the entire 2011-2012 biennium.  VEPCO notes that the Commission itself recognized that many of the provisions of Code § 56-585.1 place express limits on the Commission's discretion as to the determination of an ROE.  VEPCO contends that if the Commission were also not limited in its discretion as to when an ROE would be applied, this would "swallow up or 'end-run' many of the stated limitations on its authority."

The appellees respond that the General Assembly expressly set specific limitations on the Commission's authority to determine the ROE, but was silent as to when the ROE should be applied.  They contend that because the nature of the biennial review process makes it self-evident that the ROE would not be determined until sometime during the first year of the biennium to which it would apply, the legislature must have been aware that the Commission would have been required to determine when the ROE was to be applied.  Having given no express direction on this matter, they assert that the legislative intent was to leave the matter to the Commission's sound discretion.  We agree.

"The Commission is a specialized body with broad discretion in regulating public utilities."  Level 3 Commcn's of Virginia v. State Corp. Comm'n, 268 Va. 471, 474, 604 S.E.2d 71, 72 (2004); Central Tel. Co. of Va. v. State Corp.

19

Comm'n, 219 Va. 863, 874, 252 S.E.2d 575, 581 (1979). Moreover, when the Commission is conducting a ratemaking procedure, it is exercising a legislative function delegated to it by the General Assembly. Potomac Edison Co. v. State Corp. Comm'n, 276 Va. 577, 587, 667 S.E.2d 772, 777 (2008). Thus, when a statute delegates such authority to the Commission, we presume that any limitation on the Commission's discretionary authority by the General Assembly will be clearly expressed in the language of the statute. In the absence of an express limitation, we will not add language to the statute by inference. See Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) ("Courts cannot 'add language to the statute the General Assembly has not seen fit to include.' ") (quoting Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003)). Rather, we presume that where the General Assembly has not placed an express limitation in a statutory grant of authority, it intended for the Commission, as an expert body, to exercise sound discretion. Accordingly, we hold that there is no statutory prohibition of the Commission's exercising its discretion to determine when an ROE for a given biennium will be applied.

VEPCO next contends that permitting the Commission to utilize the newly set ROE for the entire 2011-2012 biennium

20

violates Rule 1:1 because this would permit the Commission to modify its March 11, 2010 order "authorizing the 11.9% rate of return that was in effect during" the period of January 1, 2011 to November 30, 2011. However, the Commission made an express finding in the March 29, 2012 order that the stipulation adopted in the March 11, 2010 order "does not apply the 11.9% ROE determined therein to the second biennial review." VEPCO has not assigned error to this finding by the Commission. Therefore, under the facts as determined by the Commission, the 11.9% ROE never applied to the 2011-2012 biennial period, and, accordingly, the November 30, 2011 order did not modify the March 11, 2010 order.

VEPCO next contends that by applying the 10.9% ROE to the entire 2011-2012 biennium, the Commission has effectively instituted a retroactive rate change for the period of January 1, 2011 to November 30, 2011 in violation of due process guarantees of the Virginia and federal constitutions. This argument is premised on VEPCO's assertion that the March 11, 2010 order "authorized the Company to charge rates designed to provide it with the opportunity to earn an 11.9% rate of return." However, as the Commission expressly found that the 11.9% rate did not apply after December 31, 2010, VEPCO's assertion must fail.

Moreover, as appellees note in responding to this issue, and as we have already explained in addressing VEPCO's first assignment of error, the term "rates" as used in this statute refers to the rates that a utility is authorized to charge. It does not refer to the ROE which is used to measure whether the rates allowed the utility a fair rate of return. While VEPCO was required to continue charging the rates set in 2010 until the 2011 biennial review was complete, it is simply not correct to say that those "rates [were] designed to provide it with the opportunity to earn an 11.9% rate of return" in the 2011-2012 biennium. The 11.9% ROE was "designed" in the "going-in" review process that was limited to the time period applicable to that review process. Likewise, it was the 2011 biennial review that would determine the appropriate ROE for the 2011-2012 biennium. Accordingly, we hold that there has been no due process violation of VEPCO's rights under the facts of this case.

VEPCO next contends that the General Assembly could not have intended for the Commission to have discretion to set an ROE during the period to which it will be applied because this would create "significant operational concerns and risks . . . . with respect to the ability of the Company to manage its business and comply with its financial reporting obligations, as well the ability for investors to evaluate

their investment options in the Company." VEPCO contends that such uncertainty "would run directly contrary to the goals of promoting healthy and stable electric utility returns and investor perceptions that are an evident purpose of the 2007 Act."

Even if we assume that VEPCO's contentions accurately reflect public policy concerns that the Act is intended to facilitate, this Court is not the appropriate forum for addressing VEPCO's asserted deficiencies of the Act regarding those concerns. The legislature is the "author of public policy." Campbell v. Commonwealth, 246 Va. 174, 184 n.8, 431 S.E.2d 648, 654 n.8 (1993). The courts "can only administer the law as it is written." Coalter v. Bargamin, 99 Va. 65, 71, 37 S.E. 779, 781 (1901). For the courts, then, the "best indications of public policy are to be found in the enactments of the Legislature." City of Charlottesville v. DeHaan, 228 Va. 578, 583, 323 S.E.2d 131, 133 (1984) (quoting City of Danville v. Hatcher, 101 Va. 523, 532, 44 S.E. 723, 726 (1903)).

Having found that Code § 56-585.1 does not expressly limit the discretion of the Commission to set an ROE during the biennium to which it will apply, we must presume that the General Assembly found such discretion to be consistent with the policy objectives of the statute. Accordingly, we will

not consider VEPCO's policy-based arguments, but presume that if they have merit they will find redress in the appropriate forum of the legislature.

Finally, VEPCO contends that the Commission erred in relying on the stipulation agreed to by VEPCO and adopted by the Commission in the March 11, 2010 order as demonstrating that VEPCO had effectively agreed that utilization of the ROE determined during the "going-in" review was appropriate, and, thus, that utilization of the ROE determined in the 2011 biennial review was permissible. Appellees Fairfax County and the Virginia Committee for Fair Utility Rates respond that the Commission's prior action is merely consistent with and provides a rational basis for its action in the present case.

Because we have already determined that the Commission has the discretion to utilize the 10.9% ROE for the entire 2011-2012 biennium, any reliance that the Commission may have placed on VEPCO's prior stipulation to the retrospective application of the ROE from the "going-in" review, even if misplaced, would not impugn the Commission's action in this case. Moreover, the March 29, 2012 order is clear that the Commission principally relied upon its interpretation of Code § 56-585.1 as the basis for finding that it could apply the 10.9% ROE to the entire 2011-2012 biennium. The references to the 2010 stipulation in the order relied upon by VEPCO to

24

support its argument principally set the background of the case, and to the extent they may be viewed as justification for the Commission's action, this would only serve as an alternative basis for a ruling that was, in any case, correct.

CONCLUSION

In summary, we find no merit to VEPCO's contentions that the Commission is not permitted to utilize the 10.9% ROE set in the November 30, 2011 order for the entire 2011-2012 biennial period in the 2013 biennial review of the rates, terms, and conditions for the provision of generation, distribution, and transmission services by VEPCO. The Commission's construction of Code § 56-585.1 was based upon the proper application of legal principles, and we hold that the Commission did not abuse the discretion afforded to it under that statute. For these reasons, the judgment of the Commission will be affirmed.

Affirmed.