PRESENT:  Kinser, C.J., Lemons, Millette, Mims and McClanahan, JJ., and Lacy and Koontz, S.JJ.

OFFICE OF THE ATTORNEY GENERAL,
DIVISION OF CONSUMER COUNSEL
                                        OPINION BY
v.  Record Nos. 131872, 131873   JUSTICE ELIZABETH A. McCLANAHAN
                                      September 12, 2014
STATE CORPORATION COMMISSION, ET AL.

FROM THE STATE CORPORATION COMMISSION

In these consolidated appeals, we consider whether the State Corporation Commission ("the Commission") properly interpreted Code § 56-585.1(A)(6) ("Subsection (A)(6)") to allow Virginia Electric and Power Company, d/b/a Dominion Virginia Power ("Dominion"), to recover an enhanced rate of return on common equity for transmission infrastructure associated with the Brunswick County Power Station and included in the Subsection (A)(6) rate adjustment clause for that facility.

I.  Facts and Proceedings

In 2012, Dominion filed an application with the Commission for certificates of public convenience and necessity approving construction of (1) the Brunswick County Power Station, an approximately 1,358 megawatt natural gas-fired combined cycle electric generating facility to be located in Brunswick County, and (2) transmission interconnection facilities associated with the Brunswick generation plant, including new transmission lines, two new switching stations, and facilities necessary to "tap" existing transmission lines in Brunswick and Greensville

Counties.  The estimated costs of the Brunswick project total $1.27 billion, including approximately $89.1 million in associated transmission infrastructure costs.

Pursuant to Code § 56-585.1(A)(6), Dominion's application also sought approval of a rate adjustment clause ("RAC"), designated as Rider BW, to recover the costs of the Brunswick project and infrastructure associated therewith, "including the transmission facilities necessary to interconnect the facility with [Dominion's] transmission system."[1]  At the time of its

---

[1] At the time of Dominion's application, Subsection (A)(6) read, in relevant part, as follows:

> To ensure a reliable and adequate supply of electricity, to meet the utility's projected native load obligations and to promote economic development, a utility may at any time, after the expiration or termination of capped rates, petition the Commission for approval of a rate adjustment clause for recovery on a timely and current basis from customers of the costs of . . . one or more other generation facilities. . . .
>
> A utility that constructs any such facility shall have the right to recover the costs of the facility, as accrued against income, through its rates, including projected construction work in progress, and any associated allowance for funds used during construction, planning, development and construction costs, life-cycle costs, and costs of infrastructure associated therewith, plus, as an incentive to undertake such projects, an enhanced rate of return on common equity calculated as specified below.

application, Dominion's general rate of return on common equity

("ROE") authorized by the Commission during Dominion's 2011

biennial rate review was 10.4%. As part of Rider BW, Dominion

sought a 100 basis point (1%) enhancement on its general ROE for

the projected construction work in progress period, the

associated allowance for funds used during the construction

period, and the first fifteen (15) years of the service life of

---

The costs of the facility, other than return on projected construction work in progress and allowance for funds used during construction, shall not be recovered prior to the date the facility begins commercial operation.

Such enhanced rate of return on common equity shall be applied to allowance for funds used during construction and to construction work in progress during the construction phase of the facility and shall thereafter be applied to the entire facility during the first portion of the service life of the facility . . . .

Such enhanced rate of return on common equity shall be calculated by adding the basis points specified in the table below to the utility's general rate of return, and such enhanced rate of return shall apply only to the facility that is subject of such rate adjustment clause . . . .

The basis points to be added to the utility's general rate of return to calculate the enhanced rate of return on common equity . . . shall vary by type of facility, as specified in the following table.

Code § 56-585.1(A)(6) (as amended by 2012 Acts ch. 435)(emphasis added).

the Brunswick facility.[2] Dominion proposed applying the resulting 11.4% enhanced ROE to the costs of the generation facility as well as the costs of associated transmission and non-transmission infrastructure.

After receiving Dominion's application, the Commission's staff filed a motion for ruling asking the Commission to rule that the enhanced ROE authorized by Subsection (A)(6) "applies only to the 'facility,' i.e., the generating plant, and not to 'infrastructure associated therewith[.]'"  The Office of the Attorney General's Division of Consumer Counsel ("Consumer Counsel") and the Virginia Committee for Fair Utility Rates each filed responses supporting the Staff's interpretation of Subsection (A)(6).

Dominion filed a response opposing the Staff's motion, arguing that the Staff's position is inconsistent with the plain language of Subsection (A)(6), which establishes that costs of associated infrastructure are "costs of the facility."  Moreover, Dominion argued that the Staff's interpretation of Subsection

---

[2] Subsection (A)(6) includes a table designating the number of basis points to be added in calculating the enhanced ROE recoverable by a utility based on the type of generation facility constructed.  At the time of Dominion's application, a 100 basis point enhancement was available for natural gas combined-cycle generation facilities.  See 2012 Acts ch. 435.

However, in 2013, the General Assembly amended Subsection (A)(6).  As a result, electric utilities may no longer receive an enhanced ROE for new generation construction projects filed for approval after January 1, 2013, except for nuclear and offshore wind facilities.  See 2013 Acts ch. 2.

4

(A)(6) is inconsistent with the General Assembly's stated goal of providing "an incentive to undertake such projects," which necessarily require transmission and other infrastructure to function.[3]

The Commission held a public evidentiary hearing at which Dominion presented evidence in support of its application. Significantly, Dominion presented testimony that "but for" construction of the Brunswick generating facility, the related transmission lines and facilities would not be built.

As relevant to this appeal, the Hearing Examiner found that Subsection (A)(6) authorizes an enhanced ROE on all costs of a qualifying generating facility, "including the costs of infrastructure necessitated by the facility."  Consequently, the Hearing Examiner recommended that the Commission should accept Dominion's proposed rate design contained in Rider BW, including the application of the enhanced ROE to the project's transmission infrastructure, if the project were approved.[4]

---

[3] Dominion also asserted that the Staff's position contradicted the Commission's established precedent from 12 previous cases in which it had approved recovery of an enhanced rate of return for transmission infrastructure.

[4] The Hearing Examiner also concluded that Dominion should receive the enhanced ROE for the first 10 years of the plant's service life, rather than the 15 years sought by Dominion.  This finding was adopted by the Commission in its final order and is not at issue in this appeal.

The Commission issued a final order approving construction and operation of the Brunswick County Power Station and associated transmission interconnection facilities.[5] The Commission also approved Dominion's proposed rate design for Rider BW, including application of the enhanced ROE to "the transmission infrastructure approved herein as part of the [p]roject." Specifically, the Commission found that the plain language of Subsection (A)(6) "expressly includes 'costs of infrastructure associated therewith' as 'costs of the facility.'" Therefore, because Subsection (A)(6) requires that the enhanced ROE be applied to the "entire facility," the enhanced ROE must be applied to costs of associated infrastructure approved as "costs of the facility" that is the subject of the RAC.[6]

---

[5] The Commission's approval of the project is not disputed in this appeal.

[6] The Commission further noted that it had recently approved an enhanced ROE for the transmission infrastructure of three other new generation facilities. Thus, it reasoned, "[a]ny other result would be a clear departure from the Commission's consistent implementation of the plain language of [Subsection (A)(6)]."

Commissioner Dimitri concurred and joined in the final order on the approval of the project and agreed with the 100 basis point enhancement to the ROE for the generation plant for 10 years. However, he dissented from the majority's extension of the Subsection (A)(6) ROE enhancement to the project's transmission infrastructure, asserting that the enhancement is "focused specifically on generation facilities and not upon transmission or distribution," which are treated differently under the statutory framework. Commissioner Dimitri further contended that, while the portion of Subsection (A)(6)

Consumer Counsel filed a petition for reconsideration, requesting that the Commission reconsider its final order and enter an order finding that the enhanced ROE authorized by Subsection (A)(6) applies only to the costs of the generation facility, and not to costs of associated transmission infrastructure.

The Commission subsequently entered an order on reconsideration and opinion, rejecting Consumer Counsel's interpretation of Subsection (A)(6) and denying the petition.  In its order, the Commission reiterated its previous interpretation of the plain meaning of Subsection (A)(6) that transmission infrastructure was part of the "entire facility" subject to the enhanced ROE and found, as a matter of fact, that both the transmission and non-transmission infrastructure included in Rider BW were associated with the Brunswick facility.[7]  The Commission further stated that its interpretation of Subsection (A)(6) was both consistent with the General Assembly's express intent to encourage utilities to construct generation facilities

---

discussing the categories of costs a utility may recover through a RAC includes both "costs of the facility" and "costs of infrastructure associated therewith," the discussion of the enhanced ROE is addressed solely in terms of the "facility," a term that clearly means "generation facility" when read in the context of the statute.

[7] The Commission noted that these findings of fact were not contested by Consumer Counsel.

to "ensure a reliable and adequate supply of electricity . . . and to promote economic development" and with federal regulatory treatment of interconnection infrastructure. Finally, the Commission noted that its decision was consistent with prior Commission precedent applying the Subsection (A)(6) enhanced ROE to "transmission – and all other – infrastructure costs statutorily included as costs of the facility in the RAC."[8]

Consumer Counsel appeals from both the Commission's final order (Record No. 131872) and its order on reconsideration and opinion (Record No. 131873).[9]

## II. Standard of Review

We have long recognized that "[t]he Constitution of Virginia and statutes enacted by the General Assembly thereunder give the Commission broad, general and extensive powers in the control and regulation of a public service corporation." Virginia Elec. & Power Co. v. State Corp. Comm'n, 284 Va. 726, 735, 735 S.E.2d 684, 688 (2012) (quoting Northern Virginia Elec. Coop. v. Virginia Elec. & Power Co., 265 Va. 363, 368, 576 S.E.2d 741, 743-44 (2003)). Thus, "[i]n considering the appropriate standard of review to be applied when reviewing a Commission decision, we

---

[8] Commissioner Dimitri again dissented, restating his view that the enhanced ROE in Subsection (A)(6) applies only to the "generation facility" and nothing more.

[9] The assignments of error asserted by Consumer Counsel are identical for both cases. Consequently, we consolidated the cases for our consideration.

begin by giving a decision in which the Commission has exercised its expertise a presumption of correctness." Appalachian Power Co. v. State Corp. Comm'n, 284 Va. 695, 703, 733 S.E.2d 250, 254 (2012). However, we have also made clear that the standard of review applied to a Commission decision "will depend on the nature of the decision under review." Id. Here, we are called upon to review the Commission's interpretation of Code § 56-585.1(A)(6). This Court reviews such questions of statutory interpretation de novo. See id.

Furthermore, "although questions of law are reviewed de novo, the practical construction given by the Commission to a statute it is charged with enforcing is entitled to great weight by the courts and in doubtful cases will be regarded as decisive." Piedmont Envtl. Council v. Virginia Elec. & Power Co., 278 Va. 553, 563, 684 S.E.2d 805, 819 (2009)(internal quotation marks and citations omitted). For these reasons, "we will not disturb the Commission's analysis when it is based upon the application of correct principles of law." Virginia Elec. & Power, 284 Va. at 736, 735 S.E.2d at 688 (internal quotation marks and citations omitted).[10]

---

[10] We have also recognized that legislative acquiescence to the Commission's interpretation is presumed, and the Commission's interpretation will be considered decisive, when the interpretation is a long-standing one. Appalachian Power, 284 Va. at 704, 733 S.E.2d at 255. Although the Commission has implicitly interpreted Subsection (A)(6) to include an enhanced

9

III. Discussion

A. Under the Plain Language of Subsection (A)(6), "Costs of the Facility" Include "Costs of Infrastructure Associated Therewith."

This appeal requires us to discern the categories of costs encompassed within the term "facility," as it is used in Subsection (A)(6). In this inquiry, we are guided by familiar principles of statutory construction:

> When construing a statute, [this Court's] primary objective "is to ascertain and give effect to legislative intent," as expressed by the language used in the statute. "When the language of a statute is unambiguous, [this Court] is bound by the plain meaning of that language." And if the language of a statute "is subject to more than one interpretation, [this Court] must apply the interpretation that will carry out the legislative intent behind the statute." . . . "[C]onsideration of the entire statute . . . to place its terms in context to ascertain their plain meaning does not offend the rule because it is [this Court's] duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal."

Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425-26, 722 S.E.2d 626, 629-30 (2012) (internal quotation marks

---

ROE for transmission infrastructure since the adoption of the statute by the General Assembly in 2007, we have only applied this rule of construction in instances where we have found that the statutory language is ambiguous. See Commonwealth v. Appalachian Electric Power Co., 193 Va. 37,45-46, 68 S.E.2d 122, 127 (1951) (noting that the presumption of legislative acquiescence is a rule of construction that applies only when a statute is ambiguous).

Because we hold, infra, that the language of Subsection (A)(6) is plain and unambiguous, we do not presume here that the General Assembly has acquiesced to the Commission's interpretation.

and citations omitted). Furthermore, we will not single out "a particular term or phrase, but . . . construe the words and terms at issue in the context of the other language used in the statute." Buonocore v. Chesapeake & Potomac Tel. Co., 254 Va. 469, 472, 492 S.E.2d 439, 441 (1997). Finally, "[r]ules of statutory construction prohibit adding language to or deleting language from a statute." Appalachian Power, 284 Va. at 706, 733 S.E.2d at 256.

Subsection (A)(6) was enacted by the General Assembly in 2007 to create "a new proceeding allowing a utility to petition the Commission for approval of a [RAC] for the 'timely and current' recovery from customers for costs incurred in certain identified programs." Id. at 700-01, 733 S.E.2d at 253. Specifically, Subsection (A)(6) states that:

> A utility that constructs [one or more other generation facilities] shall have the right to recover the costs of the facility . . .through its rates, including projected construction work in progress, and any associated allowance for funds used during construction, planning, development and construction costs, life-cycle costs . . . and costs of infrastructure associated therewith.

Code § 56-585.1(A)(6)(emphasis added). The plain meaning of this language dictates that the "costs of the facility," recoverable by a utility which petitions the Commission for approval of a RAC, include the "costs of infrastructure associated therewith."

11

It is clear from the language used by the General Assembly that the phrase "associated therewith" relates to the term "facility."  Thus, read as a whole, Subsection (A)(6) establishes that the "costs of the facility" recoverable through a RAC include "costs of infrastructure" associated with the facility. In other words, Subsection (A)(6) dictates that costs of associated infrastructure are a cost of the facility.  This interpretation of Subsection (A)(6) does not render the phrase "associated therewith" "unnecessary and redundant."  Rather, it clearly establishes that costs of infrastructure associated with the facility, and only those infrastructure costs, are considered "costs of the facility" that may be recovered under a RAC.

B.  The Subsection (A)(6) Enhanced ROE Applies to the "Entire Facility," Including the "Costs of Infrastructure Associated Therewith."

In addition to providing for recovery of the "costs of the facility," Subsection (A)(6) states that "as an incentive to undertake such projects" a utility will receive "an enhanced [ROE] calculated as specified below."  The statute then establishes that "[s]uch enhanced [ROE] shall be applied to allowance for funds used during construction and to construction work in progress during the construction phase of the facility and shall thereafter be applied to the entire facility during the first portion of the service life of the facility."

12

Consumer Counsel contends that the term "facility," as it is used throughout Subsection (A)(6), means "generation facility." Additionally, Consumer Counsel asserts that we should construe the term "entire facility" to mean "completed facility." Thus, Consumer Counsel argues, the "entire facility" to which the Subsection (A)(6) enhanced ROE applies after the facility's construction phrase is the completed generation plant itself and nothing more.

This interpretation of Subsection (A)(6) misconstrues the plain language of the statute. To have us reach its desired result, Consumer Counsel suggests that the portion of Subsection (A)(6) that defines the "costs of the facility" merely "enumerates the types of costs that a utility shall have the right to recover through a [Subsection (A)(6)] RAC" and does not apply to the portion of the statute discussing the application of the enhanced ROE. We decline, however, to read the various portions of the statute in isolation. See Cuccinelli, 283 Va. at 425-26, 722 S.E.2d at 629-30 (holding that portions of a statute must be interpreted "as a consistent and harmonious whole."). We likewise decline to substitute the word "completed" for the word "entire" when interpreting the meaning of the phrase "entire facility" in Subsection (A)(6). See Appalachian Power, 284 Va. at 706, 733 S.E.2d at 256 ("Rules of statutory construction

13

prohibit adding language to or deleting language from a statute.").

"Entire" means: "with no element or part excepted;" or "complete in degree." Webster's Third New International Dictionary 758 (1993). Therefore, because "costs of infrastructure" associated with the facility are recoverable as "costs of the facility" under a RAC, the plain meaning of "entire facility" in the portion of the statute discussing the enhanced ROE encompasses all costs of the facility expressly delineated in the statute, including associated infrastructure costs. Even assuming that the word "facility" must mean "generation facility," Subsection (A)(6) establishes that "costs of infrastructure associated therewith" are "costs of the [generation] facility."

Moreover, in its order on reconsideration and opinion, the Commission found that both associated transmission and non-transmission infrastructure, "such as certain water and sewer lines, roads, administrative and security buildings, and other power lines that are included in the RAC under Subsection (A)(6)," should receive the enhanced ROE under the statute. Consumer Counsel does not, however, challenge the Commission's findings with regard to the non-transmission infrastructure, and we can find nothing in the plain language of Subsection (A)(6) that supports carving out only transmission infrastructure for

14

purposes of applying the enhanced ROE. Consumer Counsel asserts that Subsection (A)(6) "clearly deals with generation plants, not transmission lines." However, it is undisputed that the type of transmission interconnection infrastructure at issue here is properly included in a Subsection (A)(6) RAC.[11]

Consumer Counsel further argues that the portion of Subsection (A)(6) which states that "such enhanced rate of return shall apply only to the facility that is the subject of such [RAC]" limits the applicability of the enhanced ROE to the generation plant itself. Again, we disagree. The plain meaning of this provision establishes that the enhanced ROE applies only to the facility covered under the Subsection (A)(6) RAC, and not

---

[11] Although a separate provision, Code § 56-585.1(A)(4) ("Subsection (A)(4)"), allows a utility to seek approval of a RAC for recovery of transmission costs, a Subsection A4 RAC is limited to recovery of:

> (i) costs for transmission services provided to the utility by the regional transmission entity of which the utility is a member, as determined under applicable rates, terms and conditions approved by the Federal Energy Regulatory Commission ["FERC"], and (ii) costs charged to the utility that are associated with demand response programs approved by [FERC] and administered by the regional transmission entity of which the utility is a member.

The interconnection facilities included in Dominion's Rider BW are not regulated by FERC. Therefore, they fall outside of the ambit of Subsection (A)(4).

to other facilities that are included in other RACs or in base rates.

C. The Commission's Interpretation of Subsection (A)(6) Furthers the General Assembly's Expressly Stated Intention

The General Assembly was clear about its intentions in enacting Subsection (A)(6), stating in the text of the statute that a utility may petition the Commission for a RAC seeking recovery of the costs of a generation facility "[t]o ensure a reliable and adequate supply of electricity, to meet the utility's projected native load obligations and to promote economic development."  Furthermore, the General Assembly expressly stated in Subsection (A)(6) that a utility "shall have the right to recover . . . as an incentive to undertake such projects, an enhanced [ROE]."  (Emphasis added).

Here, the Commission found that the transmission interconnection facilities included in Dominion's Rider BW "are associated with the Brunswick generation facility and must be constructed in order for the Brunswick facility to function and serve its statutory purpose."  We agree with the Commission.  The expressly stated intention of the General Assembly in enacting Subsection (A)(6) and providing for the recovery of an enhanced ROE is to incentivize the construction of generation plants capable of "ensur[ing] a reliable and adequate supply of electricity" to citizens of the Commonwealth.  The application of

16

the enhanced ROE to the "entire facility," including the costs of necessary transmission interconnection infrastructure associated with the facility, clearly and unambiguously furthers this statutory purpose.

## IV.  Conclusion

For the reasons stated herein, we hold that a utility has the right to recover an enhanced rate of return on common equity for the costs of associated transmission infrastructure included in a Code § 56-585.1(A)(6) rate adjustment clause.  The Commission's decision will be affirmed.

Affirmed.

JUSTICE MIMS, dissenting.

The disposition of this case turns on the interpretation of the plain language of Code § 56-585.1.  The parties ably presented their arguments, and this is a close question on which reasonable minds can respectfully differ.  The majority's conclusion is articulated in a well-reasoned and well-written opinion.  Nevertheless, I dissent for the reasons stated by Commissioner Dimitri in his opinions concurring in part and dissenting in part from the Commission's final order and order on reconsideration.  I found his views persuasive and I have nothing new to add.  Mindful that the question is one of statutory interpretation, I am content to rely on the General

17

Assembly's power to amend Code § 56-585.1 if the Court has misapprehended its intent.