Present:  Hassell, C.J., Koontz, Lemons, Goodwyn, and
Millette, JJ., and Carrico and Lacy, S.JJ.

APPALACHIAN VOICES, ET AL.

v.  Record No. 081433      OPINION BY JUSTICE DONALD W. LEMONS
                                      April 17, 2009
STATE CORPORATION COMMISSION, ET AL.

                FROM THE STATE CORPORATION COMMISSION


     In this appeal, we consider whether certain provisions of

Code § 56-585.1(A)(6) violate the Commerce Clause of the

United States Constitution.  For the reasons stated below, we

will affirm the order of the State Corporation Commission

holding that there is no such violation.

                    I. Facts and Proceedings Below

     On July 13, 2007, Virginia Electric and Power Company

("Dominion") applied to the State Corporation Commission

("Commission") for "approval, certification, and rate

adjustment under § 56-585.1, § 56-580(D), and § 56-46.1 of the

Code of Virginia with regard to a carbon capture compatible,

clean-coal powered electric generation facility to be located

in the coalfield region of the Commonwealth in Wise County,

Virginia."  In its application, Dominion asserts that the

proposed coal plant will cost approximately "$1.62 billion

including the interconnection facilities necessary to

interconnect the Plant."  Dominion also contends in its

application that

[t]he coal plant will be a "carbon capture compatible, clean-powered" 585 megawatt (nominal) coal-fueled generating plant. The Plant's design will incorporate clean-coal powered mechanisms from its in-service date in 2012. It will use circulating fluidized bed ("CFB") technology, which is recognized by the Department of Energy as a Clean-Coal Technology. The Plant will also be built so that it is compatible with carbon capture technology when such technology becomes commercially available, and the site in Wise County has been designed to accommodate future installation of such equipment.

After receiving Dominion's application, the Commission gave notice of a public hearing on the application for January 8, 2008. Thereafter, the Virginia Committee for Fair Utility Rates, the Southern Environmental Law Center, the Sierra Club, Chesapeake Climate Action Network, Southern Appalachian Mountain Stewards, Appalachian Voices, the Attorney General's Division of Consumer Counsel, Competitive Bidding Group, Apartment and Office Building Association of Metropolitan Washington, and MeadWestvaco Corporation all gave notice of participation as respondents.

Dominion then filed a motion to continue the hearing from January 8, 2008 until the week of January 21, 2008 and suggested either February 5, 6, or 7, 2008 for evidentiary hearing dates. By an order, the Commission set a hearing on January 8, 2008 "for the sole purpose of receiving testimony

2

of public witnesses" and then reconvene on February 5, 2008 "to receive evidence on the application of [Dominion]."

During the January 8, 2008 hearing, the Commission heard testimony from over 100 public witnesses. On February 5, 2008 through February 8, 2008 the Commission reconvened to hear evidence on Dominion's application. The Commission, after hearing testimony and evidence, requested post-hearing briefs. The Competitive Bidding Group, Staff of the State Corporation Commission, Southern Environmental Law Center (on behalf of itself, the Sierra Club, Chesapeake Climate Action Network, Southern Appalachian Mountain Stewards, and Appalachian Voices), Dominion, the Office of the Attorney General Division of Consumer Counsel, and the Virginia Committee for Fair Utility Rates all filed post-hearing briefs in support of their positions.

Upon consideration of the evidence including public witnesses and post-hearing briefs, the Commission approved Dominion's application, subject to some requirements not germane to the appeal. Significantly for this appeal, the Commission rejected the argument that Dominion's application was premised upon statutory provisions that violated the Commerce Clause of the United States Constitution. The Commission held that because Code § 56-585.1(A)(6) "does not require that the Coal Plant use only Virginia coal, and the

Commission's approval of the application herein is not subject to such an exclusive requirement," the provision of Code § 56-585.1(A)(6) passes constitutional scrutiny. Additionally, the Commission held that because Code § 56-585.1(A)(6) establishes that a coal-fueled generating facility that utilizes Virginia coal and is located in the Commonwealth "is in the public interest" the Commission was not required independently to analyze whether the proposed coal plant was in the public interest.

Appalachian Voices, Chesapeake Climate Action Network, Sierra Club, and Southern Appalachian Mountain Stewards ("Appalachian Voices") appeal as matter of right, pursuant to Code § 12.1-39, upon three assignments of error:

1. The Commission Erred As A Matter of Law In Rejecting Petitioners' Claim That Va. Code § 56-585.1(A)(6) Is *Per Se* Unconstitutional; The Statute Violates The Commerce Clause of The United States Constitution, U.S. CONST. Art. I, § 8, cl. 3.

2. The Commission Erred As A Matter of Law In Considering The Application of Virginia Electric and Power Company, Which Was Prematurely Filed Before The Expiration of Capped Rates; The Application Was Not Properly Before The Commission And Should Have Been Dismissed.

3. The Commission Erred As A Matter of Law In Relying On Va. Code § 56-585.1(A)(6) To Rule That The Proposed Coal-Fired Electricity Generating Station Would Be In The Public Interest And Refusing "To Make a Separate Public Interest Determination."

4

## II. Standing Challenge

Initially, we observe that Dominion challenges the standing of Appalachian Voices to oppose the application and to maintain this appeal. However, Dominion did not raise the issue of standing during the proceeding before the Commission. In Martin v. Ziherl, 269 Va. 35, 607 S.E.2d 367 (2005), we held that "[a] basic principle of appellate review is that, with few exceptions not relevant here, arguments made for the first time on appeal will not be considered." Id. at 39, 607 S.E.2d at 368. Accordingly, we need not consider Dominion's challenge to Appalachian Voices' standing for the first time on appeal.

Furthermore, "[w]hile we will not entertain a standing challenge made for the first time on appeal, the Court will consider, sua sponte, whether a decision would be an advisory opinion because the Court does not have the power to render a judgment that is only advisory." Id. at 40, 607 S.E.2d at 369. The record of this case clearly presents a real controversy, the resolution of which does not constitute an advisory opinion.

## III. Constitutional Challenge

### A. Standard of Review

When an appeal is from the Commission, we have stated:

5

It is firmly established that a decision by the Commission

comes to this court with a presumption of correctness.  The Constitution of Virginia and statutes enacted by the General Assembly thereunder give the Commission broad, general and extensive powers in the control and regulation of a public service corporation.  The Commission is charged with the responsibility of finding the facts and making a judgment.  This court is neither at liberty to substitute its judgment in matters within the province of the Commission nor to overrule the Commission's finding of fact unless we can say its determination is contrary to the evidence or without evidence to support it.

Campbell County v. Appalachian Pow. Co., 216 Va. 93, 105, 215 S.E.2d 918, 927 (1975). Additionally, the Commission's decision "is entitled to the respect due judgments of a tribunal informed by experience," and we will not disturb the Commission's analysis when it is " 'based upon the application of correct principles of law.' " Lawyers Title Insurance Corp. v. Norwest Corp., 254 Va. 388, 390-91, 493 S.E.2d 114, 115 (1997) (quoting Swiss Re Life Co. Am. v. Gross, 253 Va. 139, 144, 479 S.E.2d 857, 860 (1997)).  However, the Commission's decision, if based upon a mistake of law, will be reversed.  First Virginia Bank v. Commonwealth, 213 Va. 349, 351, 193 S.E.2d 4, 5 (1972).

Northern Virginia Elec. Coop. v. Virginia Elec. & Power Co., 265 Va. 363, 368, 576 S.E.2d 741, 743-44 (2003).  We have "frequently said that the practical construction given to a statute by public officials charged with its enforcement is entitled to great weight by the courts and in doubtful cases

6

will be regarded as decisive." Commonwealth v. Appalachian Elec. Power Co., 193 Va. 37, 45, 68 S.E.2d 122, 127 (1951). However, "constitutional arguments are questions of law that we review de novo." Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005).

B.  Constitutional Analysis

Appalachian Voices asserts a challenge to Code § 56-585.1(A)(6) based upon the Commerce Clause, which declares that "The Congress shall have power . . . To regulate Commerce with foreign nations, and among the several states." U.S. CONST. art. I, § 8, cl. 3. The United States Supreme Court has expressed a corollary rule known as the "dormant" or "negative" Commerce Clause, providing implicit restraints upon the states. "The bounds of these restraints appear nowhere in the words of the Commerce Clause, but have emerged gradually in the decisions of this Court giving effect to its basic purpose." City of Philadelphia v. New Jersey, 437 U.S. 617, 623 (1978). The doctrine of the dormant Commerce Clause is intended to prevent the various states from engaging in economic protectionism and protects both consumers and out-of-state competitors.  Appalachian Voices maintains that Code § 56-585.1(A)(6) purports to permit what the dormant Commerce Clause declares unconstitutional.

Code § 56-585.1(A)(6) provides in pertinent part:

7

To ensure a reliable and adequate supply of electricity, to meet the utility's projected native load obligations and to promote economic development, a utility may at any time, after the expiration or termination of capped rates, petition the Commission for approval of a rate adjustment clause for recovery on a timely and current basis from customers of the costs of (i) a coal-fueled generation facility that utilizes Virginia coal and is located in the coalfield region of the Commonwealth, as described in § 15.2-6002, regardless of whether such facility is located within or without the utility's service territory, (ii) one or more other generation facilities, or (iii) one or more major unit modifications of generation facilities; however, such a petition concerning facilities described in clause (ii) that utilize nuclear power, facilities described in clause (ii) that are coal-fueled and will be built by a Phase I utility, or facilities described in clause (i) may also be filed before the expiration or termination of capped rates. . . .  The construction of any facility described in clause (i) is in the public interest, and in determining whether to approve such facility, the Commission shall liberally construe the provisions of this title.

The heart of this controversy focuses upon the phrase, "utilizes Virginia coal."

Appalachian Voices asserts that the statute in question "unquestionably discriminates in favor of 'Virginia coal' at the expense of out-of-state coal."  Consequently, they argue that the statutory provision is discriminatory on its face and must be declared unconstitutional pursuant to the decision of the Supreme Court of the United States in City of Philadelphia, 437 U.S. 617, as well as that Court's decisions

8

in <u>Wyoming v. Oklahoma</u>, 502 U.S. 437 (1992), and <u>Granholm v. Heald</u>, 544 U.S. 460 (2005).

In <u>City of Philadelphia</u>, the Court considered a New Jersey statute it characterized as "parochial," 437 U.S. at 627, which prohibited the importation of most solid or liquid waste which originated or was collected outside the territorial limits of the state. <u>Id.</u> at 618. Holding that the statute in question violated the Commerce Clause, the Court observed that New Jersey had "overtly moved to slow or freeze the flow of commerce for protectionist reasons." <u>Id.</u> at 628.

In <u>Wyoming v. Oklahoma</u>, the United States Supreme Court considered the constitutionality of an Oklahoma law requiring coal-fired electric utilities to burn a mixture containing at least ten percent Oklahoma-mined coal. 502 U.S. 440. As a consequence, utilities in Oklahoma reduced their purchases of Wyoming coal and the state of Wyoming suffered reduced tax revenues from the severance tax it imposed upon the mining of coal in Wyoming. <u>Id.</u> at 447. Holding that the Oklahoma statute "on its face and in practical effect, discriminates against interstate commerce" and that Oklahoma was required to but could not "justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local

9

interests at stake," the Court declared the statute unconstitutional.  Id. at 455-56 (quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S.333, 353 (1977)).

In Granholm, the United States Supreme Court reviewed Michigan and New York laws that permitted in-state wineries to ship directly to in-state consumers, but "prohibit out-of-state wineries from doing so, or, at the least, . . . make direct sales impractical from an economic standpoint."  544 U.S. at 465-66.  The Court noted that the "details and mechanics of the two regulatory schemes differ, but the object and effect of the laws are the same," and it held that the laws of both states discriminated against interstate commerce in violation of the Commerce Clause.  Id. at 466.  The Court stated:

> Time and again this Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  . . .  States may not enact laws that burden out-out-state producers or shippers simply to give a competitive advantage to in-state businesses.

Id. at 472 (internal citations omitted).

Appalachian Voices asserts that the case before us must suffer the same declaration of unconstitutional infringement of the Commerce Clause that occurred in the cases cited above. But Appalachian Voices misses the critical distinction

10

presented by the application of Dominion in this case- as Dominion consistently maintained and as the Commission held, no provision of Code § 56-585.1(A)(6) implicates interstate commerce.

Simply stated, the statute in question does not require – and the Commission did not order – that any amount of Virginia coal be used in the proposed coal-fired plant. Unlike the Oklahoma statute at issue in <u>Wyoming v. Oklahoma</u> which prescribed use of a ten percent mixture of Oklahoma coal in coal-fired plants in state, nothing in the Virginia statute requires the use of Virginia coal. What is required is the technology to be able to burn coal found in Virginia. Consequently, the phrase "utilizes Virginia coal" is descriptive and not prescriptive in content.

Virginia statutes require the plant, once operational, to favor the use of the most economical coal or other energy generating sources available, regardless of its source. Code § 56-249.6(D)(2) provides in pertinent part:

> The Commission shall disallow recovery of any fuel costs that it finds without just cause to be the result of failure of the utility to make every reasonable effort to minimize fuel costs or any decision of the utility resulting in unreasonable fuel costs, giving due regard to reliability of service and the need to maintain reliable sources of supply, economical generation mix, generating experience of comparable facilities, and minimization of the total cost of providing service.

11

Appalachian Voices did not assert and the Commission did not find that Code § 56-585.1(A)(6) altered this statutory duty to minimize fuel costs. Under this statute, the use of Virginia coal is not favored at the expense of any other source. Not only is there no economic incentive to use Virginia coal under the Virginia statutory scheme, there is a statutory disincentive to utilization of Virginia coal if use of out-of-state coal is more economical. Consequently, there is no prohibition upon importation such as was at stake in City of Philadelphia, no specific prescription of use as in Wyoming v. Oklahoma, and no economic burden imposed by a statutory scheme upon out-of-state producers that favored in-state suppliers as was the effect of the law reviewed in Granholm.

Additionally, even if the challenged provisions of Code § 56-585.1(A)(6) were found to violate the Commerce Clause, severance of the allegedly impermissible language would save the statute from invalidation. Virginia Code § 1-243 provides that:

> The provisions of acts of the General Assembly
> or the application thereof to any person or
> circumstances that are held invalid shall not
> affect the validity of other acts, provisions,
> or applications that can be given effect
> without the invalid provisions or applications.
> The provisions of all acts, except for the
> title of the act, are severable unless (i) the
> act specifically provides that its provisions
> are not severable; or (ii) it is apparent that

12

two or more acts or provisions must operate in accord with one another.

Clearly, other provisions of Code § 56-585.1(A)(6) can be given effect without the phrase, "utilizes Virginia coal," the statute itself does not specifically provide that its provisions are not severable, and no other provision of Code § 56-585.1(A)(6) operates "in accord" with the phrase at issue.

## IV. Remaining Assignments of Error

Appalachian Voices' remaining assignments of error are predicated upon a successful constitutional challenge to Code § 56-585.1(A)(6) under the Commerce Clause. Because that challenge fails, the remaining assignments of error also fail.

Specifically, Appalachian Voices argues that Dominion's application was premature and should not have been accepted by the Commission. This argument is premised upon the contention that the statute is unconstitutional and that the additional provision of the statute allowing a "coal-fueled generation facility that utilizes Virginia coal and is located in the coalfield region of the Commonwealth" to apply for rate adjustments before the expiration or termination of capped rates is inapplicable. Consequently, Appalachian Voices maintains that the Commission should not have considered Dominion's application until their capped rate expired in

13

January of 2009. Of course, the premise for this argument is faulty – the statute is constitutional, and even if it were constitutionally infirm, it is subject to severance. In either instance, Dominion's filing would not be premature.

Finally, Appalachian Voices maintains that the Commission erred in its "public interest" determination. The statute itself provides that the construction and operation of such a coal-fueled generation facility is "in the public interest." Code § 56-585.1(A)(6). Given the legislative declaration of the public interest, it was not necessary for the Commission to conduct an independent review of this issue. Like the premature filing question raised by Appalachian Voices, the assignment of error concerning the public interest determination is dependent upon a successful challenge to the constitutionality of the statute itself. Again, the premise for this argument is faulty – the statute is constitutional, and even if it were constitutionally infirm, it is subject to severance. In either instance, the Commission would not be required to conduct an independent review of the "public interest" determination made by the General Assembly.

## V. Conclusion

We hold that the Commission did not err in holding that Code § 56–585.1(A)(6) does not violate the Commerce Clause of

14

the United States Constitution.  Accordingly, the Commission did not err in approving Dominion's application.

Affirmed.
