PRESENT: Kinser, C.J., Goodwyn, Millette, Mims, McClanahan,
and Powell, JJ., and Russell, S.J.


CHARLOTTESVILLE AREA FITNESS
CLUB OPERATORS ASSOCIATION, ET AL.

                                            OPINION BY
v.      Record No. 110741          JUSTICE S. BERNARD GOODWYN
                                         January 10, 2013
ALBEMARLE COUNTY BOARD OF
SUPERVISORS, ET AL.

             FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                       Cheryl V. Higgins, Judge


CHARLOTTESVILLE AREA FITNESS
CLUB OPERATORS ASSOCIATION, ET AL.

v.      Record No. 112233

CHARLOTTESVILLE CITY COUNCIL,
ET AL.

          FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                       Cheryl V. Higgins, Judge

     Charlottesville Area Fitness Club Operators Association,

Atlantic Coast Athletic Clubs of Virginia, Inc., and Gym Quest,

Inc., d/b/a Gold's Gym Charlottesville (collectively, the

Fitness Clubs) appeal from judgments entered by the Circuit

Courts of the City of Charlottesville and the County of

Albemarle sustaining demurrers to their declaratory judgment

actions challenging the lease of public property by the City of

Charlottesville to the Piedmont Family YMCA, Inc., (YMCA) and a

use agreement governing the leased property entered into

between the City, Albemarle County, and the YMCA.  Because we

conclude the plaintiffs failed to assert a justiciable controversy, we will vacate the circuit courts' judgments and dismiss the declaratory judgment actions.

## Background[1]

In October 2007, the City of Charlottesville advertised for bidding a proposed lease of property located in McIntire Park (the Lease) for the purposes of constructing and operating a non-profit youth and family community recreation facility (the Facility).[2] The City required that any bids for the lease be received by October 15 and include a proposed use agreement setting forth the terms, conditions and requirements for operation of the Facility (the Use Agreement). The YMCA submitted the only bid for the lease and, after public hearings, the leasing of the property was approved by ordinance adopted by the Charlottesville City Council on December 17, 2007. The YMCA subsequently entered into the Lease with the

---

[1] Although we present this background to provide a context to the proceedings instituted in each case, our analysis of each case is limited to the allegations specific to that case.

[2] The notice was advertised on October 4 and October 11 in The Daily Progress pursuant to Code § 15.2-2101(A), which requires the City to advertise notice of the ordinance proposing a lease of property described in Code § 15.2-2100 once a week for two successive weeks in a newspaper having general circulation. Code § 15.2-2100(B) requires the City to publicly receive bids for the lease of public property after due advertisement and prohibits the City from leasing such property for a period longer than forty years.

City of Charlottesville, and the Use Agreement with the City and Albemarle County, both dated January 15, 2008.

Pursuant to the Lease, the City agrees to lease, for an initial term of 40 years at a nominal rent of $1.00 per year, approximately three to five acres of property located on the western side of McIntire Park, the exact boundaries of the leasehold will be determined by the City following completion of a "Master Plan" for McIntire Park.  The Lease grants the YMCA permission to occupy the property "for the purposes of constructing and operating a fitness and recreation center with such amenities as are provided for in the Use Agreement" and provides that "the use of the Facility shall be primarily for the benefit of residents of the City of Charlottesville and Albemarle County, and non-resident members of [the YMCA]."

The Use Agreement, incorporated as an exhibit to the Lease, obligates the County to "make a future capital contribution of $2,030,000 for construction of the Facility" and the YMCA to "diligently conduct a capital campaign to solicit contributions from private donors to pay for the cost of construction of the Facility."  The Use Agreement gives the City and the County each the right to appoint two members to the YMCA's board of directors and provides for an anticipated fee structure for residents of the City and County as well as financial assistance to be provided to residents by the YMCA

3

based on specified income criteria.  It also describes the components and core functions of the Facility and anticipated hours of operation.  Additionally, the Use Agreement states that the County tentatively set aside $1,250,000 in its capital budgeting for construction of a family aquatics center and that the City may also commit to a future capital contribution of $1,250,000 for that purpose, including a competitive pool with specified access for the Charlottesville High School swim team.

### A.  Fitness Clubs' Action Against Albemarle County Board of Supervisors

The Fitness Clubs instituted their declaratory judgment action against the Albemarle County Board of Supervisors and the County's chief executive officer, Robert W. Tucker, Jr. (collectively, the Board), in May 2010.[3]  They claim the Board should have issued either a "Request for Proposals" or an "Invitation to Bid" for "the provision of fitness services to County residents at below market rates in exchange for a $2 million payment" pursuant to the Virginia Public Procurement Act (VPPA), Code §§ 2.2-4300 et seq.  According to the Fitness Clubs, had the Board done so, "one or all of [the Fitness Clubs] would have responded by submitting a bid and a proposal which would provide the County with superior services at a cost

---

[3] The Fitness Clubs filed an initial complaint on May 12, 2010, and an amended complaint on September 13, 2010. Charlottesville Area Fitness Club Operators Association was omitted in the amended complaint.

4

to the County less than that provided for in the Use Agreement."

In Count I, the Fitness Clubs contend the Board's "award under the Use Agreement to the YMCA" is a contractually obligated payment for procurement of services "not authorized by [Code §] 15.2-953."[4]  In Count II, the Fitness Clubs contend the Board made its "award under the Use Agreement to the YMCA without regard to the requirements of the VPPA."  In both Counts I and II, the Fitness Clubs allege the Board's actions were "arbitrary and capricious," "exceeded the scope of the authority of the Board of Supervisors," and "violated [the Fitness Clubs'] right to equal protection and due process under the Fifth and Fourteenth Amendments to the Constitution of the United States, and [Article I], Sections 3 and 11 of the Constitution of Virginia."  The Fitness Clubs seek a declaration that the actions of the County "are void on each and all of those grounds" and "that such payment may not be made."

In Count III, the Fitness Clubs contend the Board's "decision to award the Use Agreement to the YMCA" was a "de facto disqualification of [the Fitness Clubs] as prospective

_____

[4] Code § 15.2-953 permits localities to "make appropriations of public funds . . . to any charitable institution or association, located within their respective limits or outside their limits if such institution or association provides services to residents of the locality."

5

bidders or offerors on that contract" and "in violation of the conditions of the VPPA."  The Fitness Clubs also contend that the Board's decision in April 2009 appropriating the funds for the $2.03 million payment "again had the effect of de facto disqualifying [the Fitness Clubs] as prospective bidders or offerors on that contract."[5]  They seek an "order that the disqualification of [them] as offerors or bidders be reversed, and that they be allowed to bid on the Use Agreement."[6]  They further ask the court to enjoin the Board "from proceeding under the Use Agreement."

The Board filed a demurrer to the amended complaint, which the circuit court sustained.

### B.  Fitness Clubs' Action Against Charlottesville City Council

The Fitness Clubs also instituted a declaratory judgment action against the Charlottesville City Council and the City's acting chief administrative officer, Maurice Jones (collectively, the Council), in May 2010.  In Count I of their complaint, the Fitness Clubs allege the Council "limited the bids it would accept to those which would provide for the construction of a 'non-profit' fitness and recreation center,

---

[5] According to the allegations, the $2.03 million appropriation was removed from the capital improvements plan budget due to delays in the timeline for the project and was re-appropriated in April 2009.

[6] The Fitness Clubs also seek ancillary temporary and permanent injunctive relief.

thereby excluding any for-profit entity or facility from competition." The Fitness Clubs contend that had the Council "instead advertised simply for the construction of a fitness and recreation center while continuing to require the reduced membership prices contained in the Use Agreement, it would still have received the bid from the YMCA" but "would also have received a bid from one or more of the [Fitness Clubs], each of whom has a proven track record of successfully running fitness facilities in the Charlottesville-Albemarle area." According to the Fitness Clubs, they were "aggrieved by this exclusion, and suffered actual injury as a result of their being excluded from bidding on the proposed Lease and Use Agreement."

In Count II, the Fitness Clubs allege that the Council "procured a service from the YMCA, namely the provision of fitness services at more favorable rates and the right to acquire exclusive use of a portion of that space, in exchange for valuable consideration" such that the "transaction was governed by the [VPPA]." They further contend the Use Agreement and allocation of funds were made "without regard for the requirements of the VPPA." In both Counts, the Fitness Clubs claim the Council's actions were "arbitrary and capricious," "exceeded the scope of [its] authority," and "violated the [Fitness Clubs'] right to equal protection and due process under the Fifth and Fourteenth Amendments to the

7

Constitution of the United States, and Sections 3 and 11 of the Constitution of Virginia."[7] The Fitness Clubs request that the circuit court void the Lease and Use Agreement.

The Council filed a demurrer to the complaint, which the circuit court sustained.

## Analysis

Because we are of the opinion that none of the claims asserted in the declaratory judgment actions presents a justiciable controversy, we will vacate the judgments of the circuit courts and dismiss the declaratory judgment actions because the circuit courts did not have authority to exercise jurisdiction.

The Fitness Clubs sought declaratory judgments concerning the actions of the Charlottesville City Council and the Albemarle County Board of Supervisors. Code § 8.01-184 "is the statutory authority for declaratory judgment proceedings in this Commonwealth. From it stem the jurisdiction of the courts of record to entertain applications for declaratory relief and the power to make binding adjudications of the rights of the parties involved." City of Fairfax v. Shanklin, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964).

Code § 8.01-184 states in relevant part:

---

[7] The Fitness Clubs also seek ancillary temporary injunctive relief.

8

In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for.

The purpose of a declaratory judgment proceeding is the adjudication of rights; an actual controversy is a prerequisite to a court having authority. If there is no actual controversy between the parties regarding the adjudication of rights, the declaratory judgment is an advisory opinion that the court does not have jurisdiction to render. The prerequisites for jurisdiction, an actual controversy regarding the adjudication of rights, may be collectively referred to as the requirement of a "justiciable controversy."

Thus, before a complaint for declaratory judgment can be entertained by the circuit court, it must appear that there is an "actual controversy" existing between the parties based upon an "actual antagonistic assertion and denial of right." Code § 8.01-184; see also Shanklin, 205 Va. at 229, 135 S.E.2d at 775. "The controversy must be one that is justiciable, that is, where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment." Shanklin, 205 Va. at 229, 135 S.E.2d at 775. "The dispute 'must be a real and substantial controversy admitting of specific relief through a decree of a conclusive

9

character.' " Erie Ins. Group v. Hughes, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)).  Additionally, a plaintiff must establish a "justiciable interest" by alleging facts "demonstrat[ing] an actual controversy between the plaintiff and the defendant, such that [the plaintiff's] rights will be affected by the outcome of the case."  W. S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996) (citing Code § 8.01-184; Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984)).

The General Assembly created the power to issue declaratory judgments to resolve disputes "before the right is violated."  Patterson v. Patterson, 144 Va. 113, 120, 131 S.E. 217, 219 (1926); see also Chick v. MacBain, 157 Va. 60, 66, 160 S.E. 214, 216 (1931) ("The manifest intention of the legislature . . . was to provide for a speedy determination of actual controversies between citizens, and to prune . . . the dead wood attached to the common law rule of 'injury before action.' ").  " 'The declaratory judgment acts do not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are the subject of judicial power.' "  Williams v. Southern Bank of Norfolk, 203 Va. 657, 662, 125 S.E.2d 803, 807 (1962) (quoting 26 C.J.S., Declaratory Judgments, § 7 at 59-

10

60)).  "Preventive relief is the moving purpose."  Williams, 203 Va. at 662, 125 S.E.2d at 807.  The object of the declaratory judgment action must be the adjudication of rights.

Thus, when the "actual objective in the declaratory judgment proceeding [i]s a determination of [a] disputed issue rather than an adjudication of the parties' rights," the case is not one for declaratory judgment.  Green v. Goodman-Gable-Gould Co., 268 Va. 102, 108, 597 S.E.2d 77, 81 (2004).  Moreover, "where claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding, which is intended to permit the declaration of rights before they mature, is not an available remedy."  Board of Supervisors v. Hylton Enters., 216 Va. 582, 585, 221 S.E.2d 534, 537 (1976).

> The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature.  In other words, the intent of the act is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests.  This is with a view rather to avoid litigation than in aid of it.

Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970).

11

"The reason for these rules is that the courts are not constituted, and the declaratory judgment statute was not intended to vest them with authority, to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative."  Shanklin, 205 Va. at 229-30, 135 S.E.2d at 775-76.  This Court will consider, sua sponte, whether a decision would be an advisory opinion, because we do not have the power to render a judgment that is only advisory. Martin v. Ziherl, 269 Va. 35, 40, 607 S.E.2d 367, 369 (2005). A circuit court has no authority to exercise jurisdiction over a declaratory judgment proceeding absent a justiciable controversy.  See Erie, 240 Va. at 169-70, 393 S.E.2d at 212; Shanklin, 205 Va. at 231, 135 S.E.2d at 777.  Thus, we will examine whether a justiciable controversy was asserted in these cases.

### A.  Fitness Clubs' Action Against Albemarle County Board of Supervisors

#### i. Count I – Violation of Code § 15.2-953

In Count I, the Fitness Clubs allege the $2.03 million payment provided for in the Use Agreement is not authorized by Code § 15.2-953 because it is a payment for the procurement of services under the VPPA.  The Fitness Clubs seek a declaration that the actions of the Board related to this appropriation are void and an order prohibiting such payment to the YMCA.

Code § 15.2-953 permits localities to "make appropriations of public funds, of personal property or of any real estate and donations to . . . any charitable institution or association, located within their respective limits or outside their limits if such institution or association provides services to residents of the locality."  The Fitness Clubs do not dispute that the YMCA is a charitable institution or that the YMCA provides services to the residents of the County.  Rather, the Fitness Clubs contend that Code § 15.2-953 does not authorize the Board to make a contractual payment in accordance with the Use Agreement since the Use Agreement is a procurement of services under the VPPA.

The Fitness Clubs' allegations in Count I fail to present a justiciable controversy.  "We have previously held that the declaratory judgment statutes may not be used to attempt a third-party challenge to a governmental action when such a challenge is not otherwise authorized by statute."  Miller v. Highland Cnty., 274 Va. 355, 371-72, 650 S.E.2d 532, 540 (2007).  The Fitness Clubs are strangers to the Board's negotiations with the YMCA, including its decision to make a $2.03 million payment to the YMCA and enter into the Use Agreement.  Code § 15.2-953 provides no right of action to a third party to challenge a locality's appropriation under that Code section.  Consequently, the Fitness Clubs are using the

declaratory judgment statute "to attempt a third-party challenge to a governmental action when such a challenge is not otherwise authorized by statute."  Miller, 274 Va. at 371-72, 650 S.E.2d at 540.  In doing so, the Fitness Clubs are attempting to create "greater rights than those which they previously possessed," Bishop, 211 Va. at 421, 177 S.E.2d at 524, and "bring into being" a relationship with the Board that does not exist, Williams, 203 Va. at 662, 125 S.E.2d at 807.

Although ACAC alleges that it pays taxes in Albemarle County, it is not seeking to protect the interests of the taxpayers of Albemarle County and thus does not allege a justiciable controversy.  We have recognized that "courts of equity have jurisdiction to restrain the illegal diversion of public funds at the suit of a citizen and tax payer, when brought on behalf of himself and others similarly situated." Johnson v. Black, 103 Va. 477, 484, 49 S.E. 633, 635 (1905) (emphasis added); see also Gordon v. Board of Supervisors of Fairfax Cnty., 207 Va. 827, 830-31, 153 S.E.2d 270, 273 (1967) (plaintiffs may prosecute, for themselves and all others similarly situated, action challenging unauthorized loan from local government); Appalachian Elec. Power Co. v. Town of Galax, 173 Va. 329, 333, 4 S.E.2d 390, 392 (1939) (citizen and taxpayer may seek to enjoin issuance of bonds that will result in illegal tax burden); Lynchburg & Rivermont St. Ry. Co. v.

14

Dameron, 95 Va. 545, 546, 28 S.E. 951, 951 (1898) (court has jurisdiction to restrain municipal corporation from levying and collecting an unauthorized tax or from creating an unauthorized debt upon application of one or more taxpayers who sue for the benefit of themselves and all others similarly situated). However, ACAC did not institute its action for the benefit of taxpayers and others similarly situated.  Nor has it alleged that the $2.03 million payment to the YMCA will impose an illegal tax burden or will otherwise injuriously affect the taxpayers of the County.

To the contrary, ACAC seeks to protect its own interests as a business that provides fitness services.  More specifically, it contends that had the Board issued a request for proposals or invitation to bid for the provision of fitness services in exchange for a $2 million payment, one or all of the Fitness Clubs would have responded by submitting a bid. The interests that ACAC advances are made even more apparent by the harm it claims—that the Board's award under the Use Agreement, not authorized by Code § 15.2-953, violated its rights to equal protection and due process.[8]  Accordingly, Count I does not constitute an action by a taxpayer on behalf of itself and others similarly situated to restrain an unlawful

_____

[8] The Fitness Clubs assert they have a constitutionally protected property interest in the public business opportunity presented by the Use Agreement.

15

tax or illegal debt, and therefore, ACAC does not present a justiciable controversy.

Finally, regardless of whether the Fitness Clubs seek to protect their own interests or those of taxpayers, what they seek in Count I is an order preventing the $2.03 million payment to the YMCA. The Fitness Clubs allege that the Board is contractually bound to make this payment to the YMCA under the Use Agreement negotiated between the Board, the Council, and the YMCA. However, the YMCA is not a party defendant, and when courts lack the power to bind all parties to the controversy, opinions are merely advisory "'where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive.'" Erie, 240 Va. at 170, 393 S.E.2d at 212 (quoting E. Borchard, Declaratory Judgments 35 (2d ed. 1941)). Without the YMCA as a party defendant, the Fitness Clubs' declaratory judgment action seeking to prevent payment under the Use Agreement "cannot be sufficiently conclusive."[9] Erie, 240 Va. at 170, 393 S.E.2d at 212. Thus, the controversy was not justiciable and the circuit court did not have authority to provide the requested declaratory relief. See id.

---

[9] Additionally, the City is not a party to the complaint filed in the Circuit Court of the County of Albemarle.

16

ii.  Count II – Violation of VPPA

In Count II, the Fitness Clubs allege the Board violated the VPPA in awarding the Use Agreement to the YMCA without issuing a request for proposals or invitation to bid.  They seek a declaration preventing payment to the YMCA.  As in Count I, the Fitness Clubs do not allege a justiciable controversy and are attempting to use a declaratory judgment action to create rights they do not possess.

The rights and obligations conferred by the VPPA did not exist at common law and were created entirely through the enactment of VPPA's statutory scheme.  Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 330, 455 S.E.2d 712, 718 (1995).  These remedies are exclusive and do not provide actual or potential bidders with any remedy independent of those created by the VPPA.  Sabre Constr. Corp. v. County of Fairfax, 256 Va. 68, 73, 501 S.E.2d 144, 147-48 (1998).  Because the VPPA "constitutes a waiver of public bodies' sovereign immunity" and "is in derogation of common law," its provisions "must be strictly construed."  Id. at 73, 501 S.E.2d at 147.

Assuming, without deciding, that the Use Agreement was an award of a public contract within the meaning of the VPPA,[10] the

---

[10] The VPPA requires that "[a]ll public contracts with nongovernmental contractors for the purchase or lease of goods, or for the purchase of services, insurance, or construction, shall be awarded after competitive sealed bidding, or

Fitness Clubs do not allege that the VPPA provides a mechanism for them to protest an award of a public contract and they have no remedy independent of the VPPA.[11]  Thus, the Fitness Clubs allege no justiciable controversy.  In seeking to void the allocation of funds to the YMCA by reason of a violation of the VPPA, the Fitness Clubs are attempting to challenge governmental action in a manner not authorized by statute and to create rights through the declaratory judgment statute that they do not have under the VPPA.  <u>Miller</u>, 274 Va. at 371-72,

---

competitive negotiation as provided in this section, unless otherwise authorized by law."  Code § 2.2-4303(A).

[11] The provisions of the VPPA "permit only bidders, offerors, and contractors, within the meaning of the Act, to invoke those remedies by protesting an award, initiating administrative procedures, or bringing an action to challenge a decision to award a contract."  <u>Concerned Taxpayers</u>, 249 Va. at 330, 455 S.E.2d at 718; <u>see</u> Code § 2.2-4360(A).  The VPPA, though, "does not provide a right of action to those not involved in the bidding and procurement process."  <u>Concerned Taxpayers</u>, 249 Va. at 330, 455 S.E.2d at 718.  The Fitness Clubs do not contend that they were actual bidders or offerors on the Use Agreement, but contend they were denied the opportunity to bid on the Use Agreement.

In addition, the Fitness Clubs did not submit a protest to the Board under Code § 2.2-4360 or institute a legal action within ten days after they claim the Board decided to or did award the Use Agreement.  "When a special limitation is part of the statute creating the substantive right, the limitation is not merely a procedural requirement, but a part of the newly created substantive cause of action."  <u>Sabre Constr. Corp.</u>, 256 Va. at 72, 501 S.E.2d at 147.  The VPPA's limitation on the right to appeal the decision of a public body is "a condition precedent to maintaining the claim and failure to comply with it bars the claim."  <u>Id.</u>  Thus, even if the Fitness Clubs were offerors or bidders on the Use Agreement, they would have no claim under the VPPA.

18

650 S.E.2d at 540; Bishop, 211 Va. at 421, 177 S.E.2d at 524; Williams, 203 Va. at 662, 125 S.E.2d at 807.

Finally, without the YMCA as a party defendant, the Fitness Clubs' declaratory judgment action seeking to prevent payment under the Use Agreement "cannot be sufficiently conclusive," and for that reason did not present a justiciable controversy. See Erie, 240 Va. at 170, 393 S.E.2d at 212.

### iii. Count III – Violation of VPPA

In Count III, the Fitness Clubs allege the Board violated the VPPA by disqualifying them from bidding on the Use Agreement and seek a declaration reversing the Board's alleged decision to disqualify them and a declaration allowing them to bid on the Use Agreement.

Although the VPPA creates a procedure for challenging a public body's refusal of permission to participate in the bidding process or disqualification from participation in the bidding process, the Fitness Clubs do not allege that they have rights under those provisions nor have they brought their action pursuant to those provisions.[12] In seeking to "reverse"

---

[12] A "[p]otential bidder or offeror" entitled to bring an action under Code § 2.2-4364 challenging the refusal of permission or disqualification from participation in bidding is a person engaged in the sale of services "of the type to be procured under the contract, and who at such time is eligible and qualified in all respects to perform that contract, and who would have been eligible and qualified to submit a bid or proposal had the contract been procured through competitive

19

their "de facto disqualification," the Fitness Clubs are attempting to challenge governmental action in a manner not authorized by statute, and to create rights through the declaratory judgment statute that they do not have under the VPPA. Miller, 274 Va. at 371-72, 650 S.E.2d at 540; Bishop, 211 Va. at 421, 177 S.E.2d at 524; Williams, 203 Va. at 662, 125 S.E.2d at 807. Thus, the Fitness Clubs fail to allege a justiciable controversy subject to resolution through a declaratory judgment proceeding. Additionally, without the YMCA as a party defendant, the Fitness Clubs' action seeking to allow them an opportunity to bid on the Use Agreement, which was executed in 2008 and would necessarily involve the rights

---

sealed bidding or competitive negotiation." Code § 2.2-4301. The Fitness Clubs' action against the County contains no allegations establishing that they were "eligible and qualified in all respects to perform that contract" and "would have been eligible and qualified to submit a bid or proposal had the contract been procured through competitive sealed bidding or competitive negotiation." Id. The Fitness Clubs merely allege that one or all of them would have submitted "a bid and proposal which would provide the County with superior services at a cost to the County less than that provided for in the Use Agreement." There are no allegations purporting to establish the qualifications or capabilities of the Fitness Clubs, much less their qualifications or capabilities as they relate to the terms and conditions of the Use Agreement.

Furthermore, the Fitness Clubs did not institute an action against the Board within ten days after they contend the "disqualification" occurred, whether it occurred when the Board entered into the Use Agreement with the YMCA in January 2008 or when the Fitness Clubs contend the $2.03 million payment was re-appropriated in April 2009. Nor are there any allegations establishing when the Fitness Clubs received notice of their "disqualification" to show that their action was filed within ten days of any such notice. Code § 2.2-4357(A).

of all parties to that agreement, "cannot be sufficiently conclusive" and is therefore not justiciable. Erie, 240 Va. at 170, 393 S.E.2d at 212.

B.  Fitness Clubs' Action Against Charlottesville City Council

i.   Count I – the Lease

In Count I of their complaint, the Fitness Clubs seek a declaratory judgment, contending that they were excluded from bidding on the Lease because the Council "limited the bids it would accept to those which would provide for the construction of a 'non-profit' fitness and recreation center."  They request that the Lease be voided because they were denied their "right to equal protection and due process."

The Council advertised the invitation for bids pursuant to Code § 15.2-2101.  The Fitness Clubs do not claim that the Council failed to comply with this Code section, nor do they assert a right of action against the Council for a violation of the procedures governing the leasing of public property as set forth in Code § 15.2-2100, et seq.  Rather, the basis for their request for a declaratory judgment is the claim that the Council's decision to limit the Facility to a nonprofit fitness and recreation center violated their constitutionally protected property rights.

First, according to the allegations of their complaint, and the language of the notice of bidding and public hearing

21

incorporated therein, the Council did not exclude any person or organization from bidding, and therefore, did not exclude the Fitness Clubs from submitting a bid for construction and operation of a nonprofit facility.  Accordingly, this Count does not allege an "actual antagonistic assertion and denial of right."  Code § 8.01-184.

Also, as discussed previously in this opinion, "declaratory judgment statutes may not be used to attempt a third-party challenge to a governmental action when such a challenge is not otherwise authorized by statute."  Miller, 274 Va. at 371-72, 650 S.E.2d at 540.  This is particularly applicable to the Fitness Clubs' challenge to the Lease since the Fitness Clubs did not seek to bid on the Lease, did not protest the Council's limitation to construction and operation of a non-profit facility, and did not otherwise seek a determination from the Council as to whether they could submit a bid on the Lease.  In essence, they are attempting to use the declaratory judgment statute to create rights they do not otherwise have.  Bishop, 211 Va. at 421, 177 S.E.2d at 524; Williams, 203 Va. at 662, 125 S.E.2d at 807.

Furthermore, this Count suffers from the same deficiencies as the Counts against the Board.  The Fitness Clubs seek to void the Lease between the Council and the YMCA, even though the YMCA is not a party to these proceedings.  Without the YMCA

22

as a party defendant, the Fitness Clubs' action seeking to void the Lease "cannot be sufficiently conclusive,"[13] and does not state a justiciable controversy.  <u>Erie</u>, 240 Va. at 170, 393 S.E.2d at 212.

ii.  Count II – the Use Agreement

In Count II, the Fitness Clubs allege that the Council awarded the Use Agreement to the YMCA in violation of the VPPA because the Council did not issue a request for proposals or invitation to bid in connection with the Use Agreement.

Like the Fitness Clubs' claim against the Board for its failure to issue a request for proposals or invitation to bid regarding the Use Agreement, this declaratory judgment claim against the Council also fails to present a justiciable controversy.  Assuming that the Use Agreement was an award of a public contract within the meaning of the VPPA, the VPPA provides no mechanism for the Fitness Clubs to protest an award of a public contract and they have no remedy independent of the VPPA.  In seeking to void the Use Agreement, the Fitness Clubs are attempting to challenge governmental action in a manner not authorized by statute and create rights through the declaratory judgment statute that they do not have under the VPPA.  <u>Miller</u>, 274 Va. at 371-72, 650 S.E.2d at 540; <u>Bishop</u>, 211 Va. at 421, 177 S.E.2d at 524; <u>Williams</u>, 203 Va. at 662, 125 S.E.2d at 807.

---

[13] The County is also not a party to these proceedings.

Furthermore, as with the other claims, without the YMCA as a party defendant, the Fitness Clubs' action seeking to void the Use Agreement "cannot be sufficiently conclusive." Erie, 240 Va. at 170, 393 S.E.2d at 212.

## Conclusion

None of the claims asserted by the Fitness Clubs presents a justiciable controversy. Therefore, the circuit courts did not have authority to exercise jurisdiction in the declaratory judgment actions. Accordingly, we will vacate the judgments and dismiss both actions.

Record No. 110741 – Vacated and dismissed.
Record No. 112233 – Vacated and dismissed.

CHIEF JUSTICE KINSER, concurring.

To institute a declaratory judgment proceeding, a plaintiff must have standing, i.e., "a 'justiciable interest' in the subject matter of the proceeding, either in its own right or in a representative capacity." W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996); accord Deerfield v. City of Hampton, 283 Va. 759, 764, 724 S.E.2d 724, 726 (2012). "The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that [the person's] rights will be affected by the disposition of the case." Westlake Props., Inc. v. Westlake Pointe Prop. Owners Ass'n, Inc., 273 Va. 107,

24

120, 639 S.E.2d 257, 265 (2007) (emphasis added); accord Livingston v. Virginia Dep't of Transp., 284 Va. 140, 154, 726 S.E.2d 264, 272 (2012); see also Black's Law Dictionary 1536 (9th ed. 2009) (defining the term "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right").  To have the requisite "justiciable interest," a plaintiff "must demonstrate an actual controversy between the plaintiff and the defendant, such that [the plaintiff's] rights will be affected by the outcome of the case." W.S. Carnes, 252 Va. at 383, 478 S.E.2d at 299; accord Deerfield, 283 Va. at 764, 724 S.E.2d at 726; Cupp v. Board of Supervisors, 227 Va. 580, 591, 318 S.E.2d 407, 412 (1984).  Pursuant to Code § 8.01-184, the declaratory judgment statute, there must be "an 'actual controversy' existing between the parties, based upon an, 'actual antagonistic assertion and denial of right,' before the [declaratory judgment petition] can be entertained and an adjudication made." City of Fairfax v. Shanklin, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964) (quoting Code § 8.01-184).

As the majority recognizes, rendering a declaratory judgment in the absence of an actual controversy constitutes an advisory opinion.[1]  And, while this Court has said that it

---

[1] The term "advisory opinion" is defined as "[a] nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose."  Black's Law Dictionary 1201 (9th ed. 2009).

25

" 'will not entertain a standing challenge made for the first time on appeal, the Court will consider, sua sponte, whether a decision would be an advisory opinion because the Court does not have the power to render a judgment that is only advisory.' " Appalachian Voices v. State Corp. Comm'n, 277 Va. 509, 515, 675 S.E.2d 458, 460 (2009) (quoting Martin v. Ziherl, 269 Va. 35, 40, 607 S.E.2d 367, 369 (2005)). "[A]ppellate courts do not sit to give opinions on moot questions or abstract matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation." Hallmark Pers. Agency, Inc. v. Jones, 207 Va. 968, 971, 154 S.E.2d 5, 7 (1967).

In the appeals now before the Court, Charlottesville Area Fitness Club Operators Association, Atlantic Coast Athletic Clubs of Virginia, Inc. (ACAC), and Gym Quest, Inc., d/b/a Gold's Gym Charlottesville, (collectively, the Fitness Clubs), challenge the actions of the Charlottesville City Council (the Council) and the Albemarle County Board of Supervisors (the Board) in executing a contract for fitness and recreation services (the Use Agreement) and a lease of real property (the Lease) with the Piedmont Family YMCA, Inc. (YMCA). None of the plaintiffs, however, alleged any rights that would be adversely affected by the outcome of this litigation. Thus, in the absence of an actual controversy, any adjudication on the

26

merits of the declaratory judgment actions would be an advisory opinion.  For that reason, I conclude that the circuit court did not err by sustaining, albeit for the wrong reason, the demurrers filed by the Council and the Board.  See Deerfield, 283 Va. at 767, 724 S.E.2d at 728 (affirming the trial court's judgment dismissing a declaratory judgment action by applying the right result for the wrong reason doctrine).

In their declaratory judgment actions against the Council and the Board, the Fitness Clubs challenged, in part, the validity of the Use Agreement under Code § 15.2-953 because it was, according to the Fitness Clubs, a contract for the procurement of services and thus under the purview of the Virginia Public Procurement Act (VPPA), Code §§ 2.2-4300 through -4377.  Code § 15.2-953 authorizes localities to appropriate, among other things, public funds to any charitable institution or association if the particular entity serves the residents of the donating locality.  However, neither that statute nor any other authorizes an entity that claims status as a potential bidder, see Code § 2.2-4301 (defining the term "[p]otential bidder or offeror"), to challenge the legality of an appropriation made pursuant to Code § 15.2-953.

In other words, the Fitness Clubs, by using the declaratory judgment statute as a vehicle to challenge the Council's and Board's actions with regard to the Use Agreement,

are attempting to assert rights that they do not otherwise have.[2]  Code § 8.01-184 "may not be used to attempt a third-party challenge to a governmental action when such a challenge is not otherwise authorized."  Miller v. Highland Cnty., 274 Va. 355, 371, 650 S.E.2d 532, 540 (2007).  In Miller, the plaintiff property owners filed a declaratory judgment action challenging the jurisdiction and authority of a locality's planning commission in approving a conditional use permit for nearby property.  Id. at 368-69, 650 S.E.2d at 538.  Although the plaintiffs conceded they had no statutory right to appeal, they argued they could challenge the legality of the planning commission's decision through a declaratory judgment action. Id. at 369, 650 S.E.2d at 538.  We disagreed.

We stated that Code § 8.01-184 "do[es] not create or alter any substantive rights, or bring any other additional rights into being. . . . 'The intent of the declaratory judgment statutes is not to give parties greater rights than those which

---

[2] I disagree with the majority that the Fitness Clubs cannot contest the legality of the Use Agreement because they did not bring their challenge under the VPPA.  Code § 2.2-4360 contains the requirements for protesting an "award or decision" made under the VPPA, and Code § 2.2-4364 allows certain bidders or offerors to bring actions in the appropriate circuit court to challenge particular decisions.  Because the Council and Board did not proceed under the VPPA in the first instance and operated outside of those provisions in executing the Use Agreement, it would have been impossible for the Fitness Clubs to challenge the validity of the Use Agreement according to the VPPA's requirements.

they previously possessed, but to permit the declaration of those rights before they mature.'" Id. at 370, 650 S.E.2d at 539 (quoting Cupp, 227 Va. at 592, 318 S.E.2d at 413). Moreover, "the declaratory judgment statutes may not be used to attempt a third-party challenge to a governmental action when such a challenge is not otherwise authorized by statute." Id. at 371-72, 650 S.E.2d at 540. Because no statute gave "third parties . . . a right of appeal from such a determination" by the planning commission, the plaintiffs "effectively attempt[ed] to create a right of appeal that does not exist by statute." Miller, 274 Va. at 371, 650 S.E.2d at 539-40. We thus affirmed the trial court's judgment dismissing the action. Id. at 372, 650 S.E.2d at 540.

The same rationale applies here. The Fitness Clubs are using Code § 8.01-184 "to attempt a third-party challenge to a governmental action when such a challenge is not otherwise authorized by statute." Miller, 274 Va. at 371-72, 650 S.E.2d at 540.

In addition, none of the Fitness Clubs alleged facts to demonstrate the right as taxpayers to challenge the validity of the Use Agreement. Taxpayers have the common law right to "restrain local government officials from exceeding their powers in any way which will injuriously affect the taxpayers." Gordon v. Board of Supervisors, 207 Va. 827, 830, 153 S.E.2d

29

270, 273 (1967); see Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 331, 455 S.E.2d 712, 718 (1995). This common law right is based on taxpayers being responsible for debts incurred illegally and requires that the suit be brought on behalf of the taxpayer plaintiffs and others similarly situated, i.e., other taxpayers who would be forced to pay for the illegal expenditure. See Appalachian Elec. Power Co. v. Town of Galax, 173 Va. 329, 332-33, 4 S.E.2d 390, 392 (1939); Lynchburg & Rivermont St. Ry. Co. v. Dameron, 95 Va. 545, 546, 28 S.E. 951, 951-52 (1898).

In its complaint against the Board, ACAC alleged that it is a taxpayer in Albemarle County. But as the majority notes, its action was not brought as a taxpayer challenging the illegal expenditure of money for which it and other similarly situated taxpayers will be compelled to pay. Rather, ACAC, like all of the Fitness Clubs, challenged the legality of the actions taken by the Council and the Board because it wished to compete for the opportunity to provide fitness and recreation services as specified in the Use Agreement. Thus, its claim was not brought on behalf of other taxpayers. In the action against the Board, Gold's Gym Charlottesville is not a taxpayer in Albemarle County, and none of the other Fitness Clubs are taxpayers in the City of Charlottesville. Therefore, they failed to allege, in either declaratory judgment action, rights

as taxpayers that will be affected by the outcome of these appeals with regard to the Use Agreement.

In their declaratory judgment action against the Council, the Fitness Clubs also asserted that the Council, by advertising to lease real property for the purpose of constructing a "non-profit" youth and family community recreation facility, "exclude[ed] any for-profit entity or facility from competition."  Notably, the Fitness Clubs did not allege that the Council permitted only non-profit entities to bid on the proposed lease.  Furthermore, while the Fitness Clubs asserted that the Council's decision with regard to the terms of the Lease was arbitrary and capricious, they failed to specify any violation of the statutes governing the lease of public property.[3]

---

[3] The Fitness Clubs, nevertheless, alleged a violation of their due process and equal protection rights due to Council's advertising and award of the Lease.  The "activity of doing business, or the activity of making a profit is not property in the ordinary sense" and cannot be a property interest for purposes of the Due Process Clause.  College Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 675 (1999).  The Fitness Clubs' asserted inability to bid on the Lease, therefore, cannot constitute a denial of due process.  See id.; Lee v. City of Norfolk, 281 Va. 423, 433, 706 S.E.2d 330, 335 (2011) (plaintiff in procedural due process claim must be deprived of constitutionally protected interest in life, liberty, or property).  Similarly, the Fitness Clubs' alleged equal protection claim fails because Code §§ 15.2-2100 through -2108.1:1 do not give them a "legally protected interest" in bidding on a lease of the City's property.  See Wilkins v. West, 264 Va. 447, 459, 571 S.E.2d 100, 106 (2002) (standing for equal protection claim requires an "injury in

31

In sum, I conclude that the Fitness Clubs failed to "demonstrate an actual controversy . . . such that [their] rights will be affected by the outcome of [these actions]." W.S. Carnes, 252 Va. at 383, 478 S.E.2d at 299. They did not have a "substantial legal right" to adjudicate their declaratory judgment actions because they did not assert the denial of rights provided by statute or common law. Westlake Props., 273 Va. at 120, 639 S.E.2d at 265. Thus, any decision by this Court would be advisory. See Appalachian Voices, 277 Va. at 515, 675 S.E.2d at 460 (holding that "'the Court does not have the power to render a judgment that is only advisory'") (quoting Martin, 269 Va. at 40, 607 S.E.2d at 369). For these reasons, I respectfully concur and would affirm the judgments of the circuit court.

---

fact – an invasion of a legally protected interest") (internal quotation marks omitted). See Code §§ 15.2-2100 through -2108.1:1 (imposing restrictions on the sale or lease of certain public properties, and the granting of franchises, by cities and towns).

JUSTICE MIMS, dissenting.

The appellants allege they would have bid to provide goods or services to the governing bodies of Albemarle County and the City of Charlottesville under the terms of the Virginia Public Procurement Act, Code § 2.2-4300 et seq. ("the VPPA"), but these bodies failed to solicit bids. The appellants therefore brought actions for declaratory judgment under Code § 8.01-184 in which they assert that the VPPA applied to the goods and services the bodies sought to procure. They seek a declaration that the actions contravening the VPPA are void. The majority concludes that such actions for declaratory judgment do not present a justiciable controversy. Because I believe the General Assembly anticipated that courts would enforce the VPPA against public bodies that fail to comply with its requirements, I must dissent.

Code § 2.2-4303(A) requires that "[a]ll public contracts with nongovernmental contractors for the purchase or lease of goods, or for the purchase of services, insurance, or construction, shall be awarded after competitive sealed bidding, or competitive negotiation as provided in this section, unless otherwise authorized by law."[*] The appellants

---

[*] Code § 2.2-4301 defines a public contract as "an agreement between a public body and a nongovernmental source that is enforceable in a court of law."

33

filed actions for declaratory judgment in which they asserted that the contractual arrangements entered into by the appellees were contracts within the meaning of the statute.  The appellees countered that their actions were authorized by Code § 15.2-953 and therefore were outside the scope of the VPPA. Thus the issue presented in these cases is whether the VPPA applies at all.

The majority opinion begs the question.  It assumes the VPPA applies and then faults the appellants for failing to cite any provision within it that provides a remedy for the wrong they allege.  However, the wrong they allege is that the public bodies erroneously determined the VPPA did not apply and consequently failed to comply with its requirements.

The remedies set forth in the VPPA presuppose that it applies.  For example, as noted in the majority opinion, Code § 2.2-4360(A) defines the procedures available to a bidder or offeror, or potential bidder or offeror, to protest the award or decision to award a contract.  However, under the terms of Code § 2.2-4303(A), such an award may only be made after competitive sealed bidding or competitive negotiation, unless one of the exceptions set forth elsewhere in Code § 2.2-4303 applies.

Here, the public bodies conducted no competitive sealed bidding or competitive negotiation and invoked none of the

34

statutory exceptions.  Rather, they determined, correctly or incorrectly, that the VPPA did not apply because in their view their procurement was independently authorized by Code § 15.2-953.  Consequently, no contract was "awarded" within the meaning of Code § 2.2-4360.  Accordingly, the procedures set forth in that provision by which actual or potential bidders and offerors protest awards have nothing to do with the inquiry these cases present.

Similarly, the majority opinion notes that Code § 2.2-4364 sets forth procedures available to actual or potential bidders and offerors refused permission to participate or disqualified from participating in bidding or competitive negotiation.  However, the public bodies in this case failed to initiate the bidding or competitive negotiation processes; they believed the VPPA did not apply.  Therefore, there was no bidding or competitive negotiation for anyone to be refused permission to participate or disqualified from participating in.  Accordingly, like Code § 2.2-4360, Code § 2.2-4364 has nothing to do with the inquiry these cases present.

In short, the VPPA provides no internal procedures for determining whether it applies to a contract.  Yet the General Assembly clearly intended the VPPA to apply to those contracts defined in Code § 2.2-4303(A).  The conclusion that the General Assembly provided no mechanism to adjudicate a dispute over

35

whether the VPPA applied to a procurement action, simply because the VPPA does not contain any, leaves the VPPA unenforceable where a public body determines by fiat that the VPPA does not apply. That is an untenable result in face of the clear statutory expression of the legislature's intent that the VPPA's procurement procedures be mandatory, rather than voluntary. Because the majority opinion leaves such decisions by public bodies outside the scope of judicial review, I must dissent from the Court's determination that these actions for declaratory judgment do not present justiciable controversies.

JUSTICE McCLANAHAN, with whom SENIOR JUSTICE RUSSELL joins, concurring.

I concur in the majority's judgment because I agree that none of the claims asserted presents a justiciable controversy for the reasons stated by the majority. I write separately to clarify that, in my opinion, the absence of a justiciable controversy deprived the circuit courts of subject matter jurisdiction.[1]

---

[1] Although this Court has previously cautioned that the term "[j]urisdiction is a word of many, too many, meanings," Ghameshlouy v. Commonwealth, 279 Va. 379, 388, 689 S.E.2d 698, 702 (2010) (internal quotation marks and citations omitted), the majority declines to classify the nature of the jurisdictional defect in this case, preferring instead to leave the question conspicuously unanswered.

36

"Subject matter jurisdiction is the authority granted to a court by constitution or by statute to adjudicate a class of cases or controversies." Earley v. Landsidle, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999). "The lack of subject matter jurisdiction cannot be waived," "cannot be conferred on a court by the litigants," and "may be raised at any time." Virginian-Pilot Media Cos., LLC v. Dow Jones & Co., Inc., 280 Va. 464, 468, 698 S.E.2d 900, 902 (2010); see also Afzall v. Commonwealth, 273 Va. 226, 230, 639 S.E.2d 279, 282 (2007) (subject matter jurisdiction cannot be given to a court by agreement or inaction of parties "and the want of such jurisdiction of the trial court will be noticed by this [C]ourt *ex mero motu*"). "A judgment or order entered by a court that lacks jurisdiction of the subject matter is a nullity." Virginian-Pilot, 280 Va. at 468, 698 S.E.2d at 902.

The General Assembly conferred subject matter jurisdiction upon circuit courts to issue declaratory judgments to resolve disputes "before the right is violated." Patterson v. Patterson, 144 Va. 113, 120, 131 S.E. 217, 219 (1926). The scope of the court's subject matter jurisdiction is set forth in Code § 8.01-184, which states, in pertinent part, that "[i]n cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right." An "actual controversy" is

37

one that is based upon an "actual antagonistic assertion and denial of right." Id. In other words, "[t]he controversy must be one that is justiciable, that is, where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment." City of Fairfax v. Shanklin, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964).[2]

Absent a justiciable controversy, a circuit court has no subject matter jurisdiction over a declaratory judgment proceeding. See, e.g., Erie Ins. Group v. Hughes, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990) (sustaining defendant's challenge to subject matter jurisdiction after "[f]inding no justiciable controversy within the definition of our declaratory judgment statutes"); Fairfax County Board of Supervisors v. Southland Corp., 224 Va. 514, 519 & n.1, 521, 297 S.E.2d 718, 720-21 & n.1, 720 (1982) (holding "that the [circuit] court had subject matter jurisdiction" after finding the existence of the prerequisites for a justiciable controversy under Code § 8.01-184).[3]

---

[2] As the majority explains, the determination of whether a justiciable controversy exists entails the consideration of certain prerequisites to promote the legislative underpinnings for declaratory actions and to ensure courts do not render advisory opinions, decide moot questions or answer inquiries which are merely speculative. Shanklin, 205 Va. at 229-30, 135 S.E.2d at 775-76.

[3] These decisions make clear that subject matter jurisdiction is not conferred upon the circuit court simply by filing a declaratory judgment action or invoking the circuit

38

Accordingly, since none of the claims asserted by the Fitness Clubs presents a justiciable controversy, Code § 8.01-184 did not confer authority upon the circuit courts to entertain the declaratory judgment actions. In other words, the circuit courts lacked subject matter jurisdiction over these actions. Therefore, I agree their judgments should be vacated.

---

court's authority under Code § 8.01-184. Rather, the statutory requirements for existence of an actual, justiciable controversy must be examined to determine whether the circuit court has acquired subject matter jurisdiction to entertain a declaratory judgment action. See also Earley, 257 Va. at 371, 514 S.E.2d at 156 (statutory requirements under Code § 8.01-653 must be satisfied to confer subject matter jurisdiction upon Court to permit its consideration of petition for writ of mandamus).